## Henlein's Estate

*Gunnison, Fish, Gifford & Chapin* and *Fred Service,* for accountant.

*William W. Knox* and *Timothy J. Mahoney,* for Rose Brussell, claimant.

*S. Y. Rossiter* and *Robert H. Chase,* for Henrietta Carrol, claimant.

*E. C. Filer, J. O. Hertzler,* and *Jackson D. Magenau,* for charitable beneficiaries.

WAITE, P. J., September 1, 1942.—The first and partial account of the executor now before the court

for audit and distribution shows a balance amounting to $23,509.68, claims credits amounting to $3,850.46 (including a partial distribution), leaving a balance in the estate amounting to $19,659.22.

Morris M. Henlein died June 23, 1941, leaving a holographic will and two codicils, the former dated January 28, 1939, and the latter not dated, all contained in an envelope also endorsed in decedent's handwriting "Personal and Important", and kept in a desk in the den of his apartment where it was opened in the presence of disinterested witnesses after his death. Among other bequests in the first codicil is one to the Erie Branch of the Salvation Army, one to the City Mission of Erie, and another to the Zem Zem Hospital for Crippled Children of Erie, Pa. The second codicil, among other bequests, also gives the balance of the estate, if any, to the above-named Zem Zem Hospital. These are admittedly charitable bequests and to be valid under section 6 of the Wills Act of June 7, 1917, P. L. 403, and its amendments, must have been made at least 30 days prior to testator's death. Such bequests must be proved by disinterested witnesses (Kessler's Estate, 221 Pa. 314) but need not now be proved by subscribing or attesting witnesses: Spain's Estate, 327 Pa. 226.

The codicils are as follow:

"Codicil:–

Sum of $1000 to be given to the Erie Branch of the Salvation Army.

Sum of $1000 to be given to the City Mission of Erie.

Sum of $500. each to Howard & Jack Filer x 6014 Rimpau Blvd. Los Angeles, Cal.

Sum of $1000 to the Zem Zem Hospital for crippled children, of Erie, Pa. (If enough is left to pay said $1000 to Zem Zem Hospital after taxes on bequests & other expense of estate have been paid.

Morris M. Henlein.

all my clothes to be given to Elmer Good, including watches (Mens).

Balance of estate, if any to go to Zem Zem Hospital–Erie, Pa. Ladies watch in Safety Dep. Bx to Mrs. Ada Schiffler 2910 Southwood Ave. Toledo. All taxes on above bequests to be paid from estate.

Henrietta Carroll to have use of house at 957 W. 25—Erie as long as she remains single. At her death or re-marriage house to become property of Zem Zem Hospital.

M. M. Henlein."

The only question raised relative to the validity of the will is whether or not the bequests to the above-named charities are valid as having been executed 30 days or more prior to decedent's death; that is to say, on or before May 24, 1941, decedent having died June 23, 1941. It has been often and truly said that no will has a brother. We have been unable to find a case which can be held to be a precedent, under the particular facts in the instant case, relative to the validity of an undated codicil making effective bequests to charities, which under section 6 of the Wills Act must have been made at least 30 days prior to testator's death. Kearns' Estate, 16 D. & C. 234, cited in proponent's brief, is not such a precedent. There the will was dated and although holographic was executed in the presence of two subscribing witnesses who were not available to prove the will, and at the hearing no testimony was produced to show whether or not the subscribing witnesses were disinterested, and testator's signature was proved by witnesses who were familiar with his handwriting. Since, under the terms of that will, the executor was to determine what particular charities were to receive the bequests, the subscribing witnesses were held to be disinterested, the requirements of the statute met, and the charitable bequests, therefore, held valid. In that case the court

quoted in part, with approval, the maxim given in Broom's Legal Maxims, page 847, which is as follows:

"Ex diuturnitate temporis omnia praesumuntur rite et solenniter esse acta. 'It is a maxim of the law of England to give effect to every thing which appears to have been established for a considerable course of time, and to presume that what has been done was done of right, and not of wrong'. This maxim applies as well where matters are in contest between private persons as to matters public in their nature."

In the instant case, the will and the codicils are holographic and the execution of the will was proved by disinterested witnesses familiar with decedent's handwriting, and the will and codicils duly admitted to probate. To that extent the above-quoted legal maxim is applicable, although unnecessary. But the gifts being to charities the statute also requires that the testamentary writing must have been made at least 30 days prior to decedent's death. When a will or codicil is undated there is, in our opinion, no presumption either for or against its having been executed 30 days or more before decedent's death. In such a case the above maxim is inapplicable as to the date of execution, and the positive 30-day requirement of the statute as to charitable bequests must, in our opinion, be proved by the weight of the competent testimony. Let us then examine the testimony to determine whether or not that burden has been met.

Mrs. Henrietta Carroll, who, unassisted, cared for decedent's apartment and also had charge of his correspondence and receipts and was apparently more closely associated with him during the years immediately preceding his death than any other person, testified that she was in his apartment at 404 West 9th Street every day during his illness, and was there in November of 1939, the day before he entered the hospital, and that he asked her to get an envelope from his desk, which she did, and that he tore it open and

took out the four small and one large sheets of paper identified by her as the will and codicils, and afterward probated as such, that Mr. Henlein made some corrections in them and then placed these five sheets (four small and one large) in another large envelope which she got from his desk at his request and that he wrote thereupon "Personal and Important". She further testified:

"He gave it to me, and he said 'Henrietta, this is my will, if anything happens to me you are to notify Mr. Hadley immediately and give him this envelope' and he told me to put the envelope back where I found it."

The second codicil concludes with this clause: "Henrietta Carroll to have the use of the house at 957 West 25th Street, Erie, as long as she remains single. On her death or re-marriage, house to become property of Zem Zem Hospital."

From other testimony offered, it appears that Mr. Henlein did not purchase the property at 957 West 25th Street until 1941, the deed being dated March 4, 1941. From this testimony it seems improbable that Mr. Henlein would attempt to dispose by will of real estate which he did not own at the time and, therefore, it seems improbable that the second codicil to the will could have been written at or prior to that time, although the large sheet of paper on which both codicils were written could have been there and placed in the envelope as identified and testified to and the second codicil written thereon later. Since the envelope in which the will and codicils were placed was sealed and the envelope in which the will and codicils were found had the seal unbroken, it necessarily follows because of that fact, and also because of the bequest of the property at 957 West 25th Street above referred to, that these papers must have been later removed from the envelope in which they were placed in November of 1939, the bequest of the said real estate made and then all placed in another envelope of the same kind

likewise sealed and endorsed "Personal and Important" in which they were found after testator's death, with the seal of the envelope unbroken. It, therefore, necessarily follows that Mrs. Carroll must have been mistaken in her testimony of June 8, 1942, that this was the *same* envelope in which the papers were placed by Mr. Henlein in November of 1939. This testimony of Mrs. Carroll relative to the identity of the envelope was modified in her testimony taken June 12, 1942, wherein she testifies that the envelope in which the will and codicils were contained when taken from testator's desk and given to Mr. Hadley, the executor, immediately after the death was a similar envelope to the one in which the papers were placed in November of 1939. Her testimony as to the identity of the envelope which she saw in decedent's desk on May 16, 1941, and as to her identification of the four small and one large sheets as being the same she saw in testator's possession in November of 1939 and which he stated was his last will, still stands unmodified and uncontradicted.

Mrs. Ruth Thacker in her testimony places no weight on the joking reply of Mr. Henlein to her joking question, made the latter part of May 1941, as to what he was doing when he said that he was "writing his will"; nor in our opinion should we do so. As a matter of fact, the will itself is dated June 28, 1938, and it is not denied that it was written at that time. Undoubtedly, the codicils were written at a later date. That Mr. Henlein knew the distinction between a "codicil" and a "will" is shown by the fact that the codicil to the will was so designated in decedent's own handwriting. Had he been writing a codicil instead of a will at the time that Mrs. Thacker refers to, it seems probable that he would have called it a "codicil" and not a "will". At any rate, we would not have the right to conclude that he meant "codicil" when he said "will". But from the fact that the testimony shows that Mr. Henlein's

reply relative to a will was made in a joking manner to Mrs. Thacker's joking inquiry, it is in our opinion without any weight whatever in attempting to prove that either of the codicils to the will was being written at that time, which although somewhat indefinite appears to have been slightly less than 30 days preceding testator's death. On the other hand, the testimony of Mrs. Carroll is positive that on May 16, 1941, the will and the codicils were enclosed in a sealed envelope kept in his desk, where she frequently saw it from that date up to the time of his death on June 23, 1941, and from which desk she removed it and turned it over to S. H. Hadley, the executor, in the presence of other disinterested witnesses immediately after decedent's death, at which time the sealed envelope showed no indications or evidence of having been opened from the time it was first sealed. The envelope itself is still sealed and the seal has apparently never been broken; the envelope having been opened at the end away from the sealed portion. Mrs. Carroll's testimony in this regard is without contradiction and positively establishes the fact that both codicils which were included in the envelope (together with the will) must have been written by decedent more than 30 days before his death. In addition to Mrs. Carroll's testimony, there is also the testimony of Mr. Edwin J. Fearon, an expert in handwriting, inks, and disputed documents, qualified by many years of study, consultation, and experience, and many times called as an expert in State and Federal courts, who in a candid and convincing manner, after having made a careful study of the will and codicils in the case, and comparing the writings and inks with letters written for and signed by testator and dated respectively February 4, 1939, February 20, 1940, March 1, 1940, and March 3, 1941, gives it as his conclusion that the first codicil "was written subsequent to the letter of February 4, 1939, and prior to the letter of February 20, 1940", and "that the

second codicil was written prior to March 3, 1941." According to this testimony the first codicil, exclusive of the last sentence preceding the signature, was written more than a year and four months preceding decedent's death (which occurred June 23, 1941), and the second codicil, including the last sentence in the first codicil, nearly four months preceding decedent's death.

We are, therefore, clearly of opinion that the codicils attached to decedent's will and offered in evidence as a part of proponent's exhibits, are valid codicils to decedent's will and that they were executed more than 30 days prior to his death, and that the bequests to the charitable institutions therein contained are, therefore, valid bequests.

A question has also been raised as to whether a certain Buick automobile purchased by decedent and in the garage at his residence at the time of his death is a part of his estate or the property of Mrs. Henrietta Carroll as an inter vivos gift from decedent. In our opinion, the weight of the testimony clearly establishes an inter vivos gift of the automobile by decedent to Mrs. Henrietta Carroll. She went with him and at his request picked out the car at the time it was purchased, and decedent then stated that he was buying the automobile for her. She had the possession and use of the car, sometimes taking decedent with her. That he often stated that the car was hers was testified to by several disinterested witnesses, and she had the key to the car. True it is, the certificate of title required by the Act of May 24, 1923, P. L. 425, was never transferred to her and the car was in decedent's garage at the time of his death. Neither of these facts is conclusive of the title and possession of the car. In Braham & Co. v. Steinard-Hannon Motor Co. et al., 97 Pa. Superior Ct. 19, at pages 23 and 25, it is said:

"It is clear that the primary purpose of the Act of 1923, supra, was to protect the public against the theft

of automobiles and their resale by the thief, and to facilitate the recovery of stolen automobiles. It was a police measure, and was not designed to establish the ownership or proprietorship of the car, but rather to register the name and address of the person having the present right of possession, and to furnish persons dealing with one in possession of a car a means of determining whether such possession was prima facie lawful. . . .

"It follows that the act does not provide nor intend to provide that the 'certificate of title' shall determine the absolute ownership of the car, or alter or affect in any manner the actual ownership of the vehicle and the relations of the persons interested in it. It only requires registration by the person entitled to its possession and in control of its operation. The certificate is not a warrant of ownership or muniment of title as usually understood in the law. It may be relevant evidence in establishing such title."

In the instant case, the reason that the certificate of title required by the above-cited act was not transferred by decedent to Mrs. Carroll at the time of the purchase was, according to the testimony of the dealer from whom it was purchased, because of the additional cost of getting new license plates. Apparently, the failure to make the transfer after April 1, 1941, when the old plates expired, was an oversight. Decedent was ill at the time and died a short time thereafter. In our opinion, very little significance is to be attached to the fact that the automobile was in decedent's garage at the time of his death, since Mrs. Carroll was his housekeeper and, according to uncontradicted testimony, was in his home every day for several weeks immediately preceding his death. Although decedent enumerated and disposed of his entire estate, including his pictures, antiques, clothing and jewelry, even mentioning a stickpin, he made no mention of the automobile. This might indicate that he did not consider the automobile as part of his estate.

"Where the intention is clearly established, less evidence is required than would otherwise be necessary to show that a delivery was made": Pyewell's Estate, 334 Pa. 154. Inasmuch as Mrs. Carroll was decedent's housekeeper at the time of his death she might very properly have kept her automobile, in which she sometimes carried decedent, in his garage. In the instant case the intention to give and the fact that he had made the gift is clearly established by the weight of the testimony. Under all the evidence we are clearly of the opinion that an inter vivos gift is established and the automobile is, therefore, held to be the property of Mrs. Henrietta Carroll, and not a part of decedent's estate.

An order of distribution will be made in accordance herewith.