## Jones Estate.

Argued March 20, 1944. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and HUGHES, JJ.

*Ralph B. Umsted,* Special Deputy Attorney General, with him *George W. Keitel,* Deputy Attorney General, and *James H. Duff,* Attorney General, and *Charles C. Crowell,* for appellant.

*Fred B. Trescher,* of *Kunkle, Trescher & Snyder,* for appellee.

OPINION BY MR. JUSTICE PATTERSON, June 30, 1944:
This is an appeal by the Commonwealth from the decree of the court below sustaining the appeal of the executors of the Estate of Margaret Ramsay Jones, deceased, and Robert Ramsay Jones, Erskine Ramsay Jones, Margaret Jones Brooks and Janet Jones Teal, beneficiaries under a deed of trust executed by Margaret Ramsay Jones, from the action of the appraisers of said

estate in including as an asset the corpus of the said trust for the purpose of imposing inheritance tax.

On May 31, 1932, three irrevocable deeds of trust were executed, each transferring a $50,000 bond of Alabama By-Products Corporation to The First National Bank and Trust Company of Greensburg, Pennsylvania, by (1) Margaret Ramsay Jones, decedent herein, providing for the payment of income to her brother Robert Ramsay for life, the principal to be distributed among named beneficiaries who were in fact the natural heirs of Robert Ramsay; by William Ramsay, providing for the payment of income to his sister, Margaret Ramsay Jones, decedent herein, for life, the principal to be distributed among named beneficiaries who were in fact the natural heirs of Margaret Ramsay Jones; (3) by Robert Ramsay, providing for the payment of income to his brother, William Ramsay, for life, the principal to be distributed among named beneficiaries who were in fact the natural heirs of William Ramsay. One Erskine Ramsay of Birmingham, Alabama, came to Pennsylvania and consulted with his brothers, Robert and William. Ramsay, and sister, Margaret Ramsay Jones, as a result of which he delivered to the First National Bank of Greensburg three $50,000 bonds of the Alabama By-Products Corporation to be turned over to them. Upon the execution of all trust agreements by the Trust Company the bonds were allocated to the respective trusts.

Margaret Ramsay Jones died August 6, 1942. An appraisement of her estate was duly made for the purpose of ascertaining the inheritance tax due the Commonwealth wherein was included the trust fund in question, valued at $49,625. Appeal was taken from said appraisement. The court below concluded that Erskine Ramsay was the settlor of the three trusts and that, therefore, the corpus of the trust here involved was not properly a part of decedent's estate. The Auditor General, by his appraiser, was directed to strike from his appraisement the item designated as " 'Trust Fund' appraised at $49,625.00." This appeal followed.

Consideration must first be given to the finding of the court below that "the real donor of all the funds under these trust agreements was Erskine Ramsay. None of the nominal donors had title to or possession of any of these securities prior to the creation of the trusts." The findings of an auditing judge, approved by the court en banc, must be considered as the verdict of a jury, and will not be reversed if supported by evidence or reasonable inferences therefrom: *Walton's Estate*, 348 Pa. 143, 145; *Frank's Estate*, 339 Pa. 499, 501. Careful reading of the record convinces us that the conclusions are unsupported by the evidence. That the bonds were not allocated prior to the creation of the three trusts and that the respective settlors did not have actual possession of any portion of the property cannot operate to make Erskine Ramsay the settlor in fact of the respective trusts. As the court below said: "Any one of all three could refuse this gift and accept instead the income during life." That they could have done so negatives, instead of supports, the conclusion that Erskine Ramsay was the settlor in fact. The real settlors were Margaret Ramsay Jones, and William and Robert Ramsay.

The question is whether a deed of trust is properly assessed for transfer inheritance tax purposes where it is one of three similar deeds of trust executed simultaneously with a common trustee, the effect of which transaction is to secure to each of the settlors income for their respective lives, with remainder to their respective heirs at law, of property in amount and character identical with that conveyed.

The Act of 1919, P. L. 521, Article I, Section 1, as finally amended by the Act of 1936, P. L. 44, 72 P.S. 2301, provides: "A tax shall be, and is hereby, imposed upon the transfer of any property, real or personal, or of any interest therein or income therefrom, in trust or otherwise, to persons or corporations in the following cases: (c) When the transfer is of property made by a resident,

. . . by deed, grant, bargain, sale or gift, made in contemplation of the death of the grantor, vendor, or donor, or intended to take effect in possession or enjoyment at or after such death." To defeat the Commonwealth's right to the tax, the grantor or settlor must part with possession, title, and enjoyment: *Dolan's Estate,* 279 Pa. 582, 588; *Reish v. Commonwealth,* 106 Pa. 521, 526. If the trust agreement secures to the settlor the income therefrom during his life he has made a transfer of his property which does not take effect until his death: *Husband's Estate,* 316 Pa. 361, 363.

The effect of the creation of these trusts is to secure to each settlor income in an amount equal to that which he has transferred. Circumstances must be considered with regard to substance, not form: *McKeown's Estate,* 263 Pa. 78, 84; *In re Perry's Estate,* 162 A. 146, 148. "The law searches out the reality and is not concerned with the form": *Lehman v. Commissioner of Internal Revenue,* 109 F. (2d) 99, 100. "The fact that the life income is the subject of a grant back to the donor by the donee, instead of a technical reservation to himself by the donor, is matter of form only; in substance and legal effect from the standpoint of the tax act, they are identical, and a transfer involving the former is just as taxable as one involving the latter": *In re Perry's Estate,* supra, 148. See 139 A. L. R. 526-7. Clearly, the execution of these reciprocal trusts was an attempt to evade the payment of transfer inheritance taxes. None of the parties have made an absolute disposition of property. They have, on the contrary, secured to themselves and their heirs no more and no less than that which they always possessed. The legislature intended to tax all transfers by which property vests in new ownership upon the death of the settlor or testator. That the reciprocal trust agreements here involved were intended to transfer the corpus of the trusts upon death of the respective settlors is evident. Each trust is, therefore, a transfer of property "intended to take effect in pos-

session or enjoyment at or after [the settlor's] death."
To hold otherwise would be to sacrifice substance for
form and condone an obvious attempt to evade payment
of the transfer inheritance tax.

The decree of the court below is reversed. Costs to be
paid by appellees.