## Brightbill, Appellant, *v.* Boeshore.

Argued January 9, 1956. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY and MUSMANNO, JJ.

*James R. Koller,* with him *Walter H. Compton, George L. Reed, Robert E. Siegrist* and *Siegrist, Koller & Siegrist,* for appellant.

*J. Pennington Straus,* with him *Josephine H. Klein, J. B. Millard Tyson, Edward H. Miller* and *Schnader, Harrison, Segal & Lewis,* for appellees.

OPINION BY MR. JUSTICE BELL, April 16, 1956:

The question presented by this appeal is whether the evidence was sufficient to establish a valid gift *inter vivos* of 670 shares of stock of Brightbill Body Works, Inc.

Plaintiff, executrix of Brightbill's estate, filed a complaint in equity to recover as an asset of her husband's estate 670 shares of the common stock of said Company represented by stock certificate No. 1. Brightbill died testate on September 7, 1953 leaving a very badly drawn holographic will dated January 27, 1951. In that will he "bequeathed" and transferred to his second wife, Stephanie Brightbill (plaintiff and appellant herein), certain specifically named real and personal property*—not including the stock in question. He was survived by his second wife, his first wife, and one child, Kathryn A. Boeshore who claimed the stock in question as an inter vivos gift from her father.

The Chancellor made the following pertinent findings of fact:

"V. On October 4, 1948, the decedent and his then wife, Elsie, entered into a written property settlement agreement providing for the incorporation of his business** and the delivery of 370 shares of stock of said company to the daughter, Kathryn A. Boeshore, and 5 shares to Richard L. Boeshore, husband of his daughter, based on a stock issue of 1500 shares and providing that said daughter and her husband shall be the owners of twenty-five percent of said stock at all times."

"VII. The decedent, Miles A. Brightbill, did incorporate his business as of September 27, 1948."

"VIII. Early in January, i.e., January 3 or 4, 1949, the following shares of stock of the M. A. Brightbill Body Works, Inc. were duly issued: Miles A. Brightbill 670 shares; Kathryn A. Boeshore 245 shares;

---

* Although the will contained no residuary clause, it is clear that Brightbill gave his second wife all or virtually all of his real and personal estate.

** Manufacturing truck bodies.

Elsie A. Brightbill 80 shares; Richard L. Boeshore 5 shares."

"IX. The following persons were elected members and officers of M. A. Brightbill Body Works, Inc.: Miles A. Brightbill, President; Richard L. Boeshore, Vice President and Secretary; Kathryn A. Boeshore, Treasurer."

"XI. Said decedent was the president, director and shareholder of said corporation from the time of its incorporation to the time of his death."

"XII. *Early in January,** 1949, i.e., after January 3, 1949, and after the issuance of the aforesaid stock, Miles A. Brightbill *duly assigned the stock certificate No. 1* of the M. A. Brightbill Body Works, Inc., to his daughter, Kathryn A. Boeshore, and *delivered said certificate to her.*"

"XIII. Kathryn A. Boeshore on receipt of said stock certificate No. 1 for 670 shares, took it to the home of her mother, where she and her husband were living, and deposited it in her jewelry box where it remained until May 27, 1949."

"XIV. On or about May 27, 1949, the M. A. Brightbill Body Works, Inc., through its president, M. A. Brightbill, and its treasurer, Kathryn A. Boeshore, rented a safe deposit box at the North Side Branch of The First National Bank of Lebanon, Pa."

"XV. Subsequent to May 29, 1949, decedent and defendant daughter, Kathryn A. Boeshore, made numerous visits to the safe deposit box at said bank, to which they both had access, together and separately, until the time of the death of the decedent on September 7, 1953."

"XVI. On or about May 27, 1949, Kathryn A. Boeshore deposited in said safe deposit box share certifi-

---

* Italics throughout, ours.

cate No. 1 for 670 shares of stock in the said M. A. Brightbill Body Works, Inc., where it was located at the time of decedent's death."

"XIX. Miles A. Brightbill, on many occasions, stated his intention that the stock of the M. A. Brightbill Body Works, Inc., should remain in the family, meaning in the hands of his first wife, his daughter and a son-in-law."

"XX. Decedent's will which made his second wife, the plaintiff, his sole beneficiary, makes no gift of stock of the M. A. Brightbill Body Works, Inc., and does not mention, directly or indirectly, decedent's child, Kathryn A. Boeshore."

"XXI. On September 8, 1953, at eight o'clock, a.m., the day after the death of the decedent, defendant, Kathryn A. Boeshore, took out of the safe deposit box of the corporation Certificate No. 1 for 670 shares of the stock of said corporation, without the knowledge or consent of the executrix of the estate of said decedent."

"XXII. On September 15, 1953, the said Kathryn A. Boeshore had certificate No. 1 for 670 shares of said stock transferred to her own name."

"XXIII. The said decedent received the dividends paid by the said corporation on said 670 shares of said stock during his lifetime and paid income tax thereon."

"XXV. From the time of the incorporation of said body works to the time of death, the decedent voted the 670 shares of said stock of said corporation."

"XXX. The business of said body works was a continuation of the business previously operated by Miles A. Brightbill."

The Chancellor then made the following two conclusions, which he termed "Findings of Fact":

"XL. The decedent, Miles A. Brightbill, delivered to the defendant, Kathryn A. Boeshore, stock certifi-

cate No. 1, plaintiff's exhibit No. 2, for 670 shares of stock in the M. A. Brightbill Body Works, Inc., with the intention of making a complete inter vivos gift."

"XLI. The decedent's estate has no right, title or interest in the 670 shares of the capital stock of M. A. Brightbill Body Works, Inc., represented by certificate No. 1. On the contrary, all property, right, title and interest in said shares were vested in the defendant, Kathryn A. Boeshore, by virtue of the assignment and delivery to her of the stock certificate."

The foregoing facts, if supported by credible and legally admissible evidence, justify the Chancellor's conclusion that Brightbill made a valid inter vivos gift to his daughter of 670 shares of stock of the corporation.

The *general principles* of law with respect to inter vivos gifts are well settled, although their application is sometimes difficult. In *Rynier Estate,* 347 Pa. 471, 474, 32 A. 2d 736, Chief Justice STERN said (p. 474): "It is a general rule that 'to constitute a valid gift inter vivos two essential elements must combine: An intention to make the gift then and there, and such an actual or constructive delivery at the same time to the donee as divests the donor of all dominion over the subject, and invests the donee therewith': Reese v. Philadelphia Trust, Safe Deposit & Insurance Co., 218 Pa. 150, 156, 67 A. 124, 126; Henderson v. Hughes, 320 Pa. 124, 126, 182 A. 392, 393; Fitzpatrick v. Fitzpatrick, 346 Pa. 202, 29 A. 2d 790." See to the same effect: *Chadrow, Exr. v. Kellman,* 378 Pa. 237, 243, 106 A. 2d 594; *Tomayko v. Carson,* 368 Pa. 379, 383, 83 A. 2d 907.

In *Tomayko v. Carson,* 368 Pa., supra, the Court said (p. 383): "A claim of a gift inter vivos against the estate of the dead must be supported by clear and

convincing evidence: Leadenham's Estate, 289 Pa. 216, 137 A. 247; Snyderwine, Admrx. v. McGrath, 343 Pa. 245, 22 A. 2d 644."

The foregoing general rule is subject to several exceptions. For example, the reservation by the donor of the right to receive dividends, and the non-transfer of the stock on the books of the corporation, and even the non-assignment or endorsement of the stock certificates, are insufficient, without more, to negate a valid gift, provided all of the essential elements of a valid inter vivos gift have been proved: *Chapple's Estate*, 332 Pa. 168, 2 A. 2d 719; *Connell's Estate*, 282 Pa. 555, 128 A. 503; *Reese v. Philadelphia Trust Co.*, 218 Pa. 150, 67 A. 124; *Packer v. Clemson*, 269 Pa. 1, 112 A. 107. See also Fletcher's Cyc. Corp., Vol. 12, §5684, page 963.

*Chapple's Estate*, 332 Pa., supra, is on its facts almost directly in point and controls the instant case. In that case a father gave his son some stocks at the same time saying: "Remember so long as I am living I have to collect the dividends and everything on the certificates and I am the boss as long as I live." *The stock certificates were never assigned or endorsed by the father; no transfer thereof was made on the books of the corporation;* the father received as his own property the dividends throughout his life and controlled the company throughout his life. The son delivered the certificates to his sister to place them in her safe deposit box. The Court held that the son's evidence "clearly show[ed] an intention to make the gift and a delivery, actual or constructive, of a nature sufficient not only to divest the donor of all dominion over the property but also to invest the donee with complete control of the subject matter of the gift: Reese v. Philadelphia Trust, etc. Co., 218 Pa. 150; Henderson v. Hughes, 320 Pa. 124." The Court said inter alia (page

170) : "Where, as here, the alleged gift is from father to son the action of the donor is viewed as a natural one, and less evidence is required to establish the intention: Yeager's Estate, 273 Pa. 359, 362; Kaufmann's Estate, 281 Pa. 519, 531. As between parties so related, if it appears that there was a voluntary delivery without explanatory words and a retention by the transferee, it can be assumed that there was an intention to give: Yeager's Estate, supra; Vogan v. Jordan, 92 Pa. Superior Ct. 519 . . . By this statement Chapple reserved only the right to the dividends, and it is clear that such a reservation does not destroy the validity of the gift. In Packer v. Clemson, supra, this court said (page 4) : 'The gift may be sustained as an executed gift, even if the right to dividends had been retained for life.' "

Appellant alleges six factors which she contends show that Brightbill never intended to and never made an executed gift: (1) he received and retained the dividends during his life; (2) the ownership of the stock was never changed on the books of the corporation; (3) Brightbill continued to vote the stock; (4) the corporation's tax returns represented that Brightbill was the owner of the shares of stock in question—this was natural and correct; (5) the By-laws provided that a transfer by an officer of the corporation of all of the stock in the corporation could be considered a resignation of his office, and (6) the loan transaction. Several of these contentions have been fully answered by the foregoing authorities. None of the others, which will be hereinafter discussed, are sufficient to nullify the gift or show that the essential elements of a valid inter vivos gift were lacking in this case.

The By-laws make obvious the reason why Brightbill did not have the shares of stock which he delivered to his daughter transferred to her name on the books

of the corporation. If he had done so he would not have been entitled to receive the dividends or vote the stock or act as President and director. Under *Chapple's Estate*, 332 Pa., supra, *Connell's Estate*, 282 Pa., supra, and *Packer v. Clemson*, 269 Pa., supra, and for the aforesaid additional reason, there is no merit in this contention of appellant.

The daughter received from her father the duly assigned certificate of stock for 670 shares, and retained possession of this certificate for several months, keeping it in her jewel box. Thereafter, as above stated, she placed it in the corporate safe deposit box to which she and her father each had access. On or about April 15, 1953, Brightbill telephoned his daughter from Florida and requested her to deliver to the Lebanon County Trust Company her certificate for 670 shares of stock as collateral for a loan of $60,000, which he wished to personally make. His daughter, as most daughters would, went to the safe deposit box, removed the stock and took it to the Treasurer of the said Trust Company, offering it as collateral for her father's loan. The Trust Company refused to accept the certificate as collateral because it had been assigned and delivered by Brightbill to his daughter. Thereupon Brightbill, instead of demanding and obtaining the stock from his daughter as he would have done if it was still his property, gave the Trust Company other collateral for his loan. Instead of aiding plaintiff, this strengthens and confirms the claim of the daughter that the stock had been given to her by her father and *was her own property*.

The fact that in 1949 Brightbill "indicated" to one of his employees that he intended to retain full control of the stock of the corporation, or that he wanted to have operating control of the corporation up to the time of his death, would not be sufficient in the light

of the other facts hereinabove mentioned to prove that a valid inter vivos gift had not been made or to nullify a gift already made. In *Pyewell's Estate*, 334 Pa. 154, 160, 5 A. 2d 123, Chief Justice (then Justice) DREW said for this Court: "Since the gifts of the property in question were fully executed by the donor, neither the fact that she [the donor] had access to the safe where the property was kept nor her subsequent receipt of dividends on this stock would invalidate the transaction: Kaufmann's Estate, 281 Pa. 519; Chapple's Estate, supra." See to the same effect *Young's Estate*, 202 Pa. 431, 440, 51 A. 1036.

In *Chapple's Estate*, 332 Pa., supra, the Court said: "At the trial the administratrix produced witnesses who testified that on several occasions after September, 1930, the decedent stated to them that he owned stock in the Kennywood Park Corporation. It is true that where the intention to make a gift is not clearly manifested subsequent acts may aid in clarifying that intention (Packer v. Clemson, supra), but where, as here, the intention is unambiguous we must confine our inquiry to what occurred at the time of the transaction. In the case of Reese v. Philadelphia Trust, etc. Co., supra, where testimony of a similar nature was produced at the trial, the court said (page 157): 'It is never permitted a donor to impeach his gift; therefore what was said or done by Mrs. Pomeroy, unassociated with her donee and unassented to by him, is wholly irrelevant to the issue and cannot be considered.' "

In Fletcher's Cyc. Corp., Vol. 12, 5686, page 970, the law is thus stated: "A gift inter vivos of stock, when once made, cannot be revoked or recalled by the donor without the consent of the donee, nor can the subsequent acts of the donor, to which the donee is not a party and to which he does not consent, affect his

title, though, of course, the donee may return the stock, thus releasing any right of ownership . . ."

The findings of fact made by the Chancellor, who saw and heard the witnesses, when confirmed by the Court en banc, will not be reversed on appeal if they are supported by adequate evidence: *Peters v. Machikas*, 378 Pa. 52, 105 A. 2d 708. We have reviewed the record and believe the findings of fact are supported by adequate evidence and justify the conclusion that Brightbill made a valid inter vivos gift to his daughter of the 670 shares of stock in question.

Decree affirmed; appellant to pay the costs.