## Meluskey Estate.

Argued January 8, 1974. Before JONES, C. J., O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*Vincent J. Dopko,* Deputy Attorney General, with him *Israel Packel,* Attorney General, for appellant.

*Samuel G. Weiss,* for appellee.

OPINION BY MR. CHIEF JUSTICE JONES, March 26, 1974:

On March 30, 1971, Clara S. Meluskey, a resident of Lebanon County, Pennsylvania, died testate. Let-

ters testamentary were issued by the Register of Wills of Lebanon County on April 1, 1971, to her sons, Reverend Andre J. Meluskey and James R. Meluskey, the named executors. After filing their Inventory and Appraisement and Statement of Debts and Deductions on December 29, 1971, the executors paid Pennsylvania inheritance tax based on a gross estate of $89,995.56. On May 17, 1972, the Commonwealth of Pennsylvania, through its Chief Inheritance Appraiser for Lebanon County filed its appraisement, which raised the value of the total taxable estate. As a result, additional inheritance taxes were assessed.[1] The executors filed a petition sur appeal from this assessment and a hearing was held on April 16, 1973.

One of the issues raised below, and the question before this Court, centers on a transfer of realty by the decedent to her son, James.[2] By a written agreement dated June 1, 1970, this realty, valued at $47,500, was transferred to James in return for his promise to pay her an annuity of $4,000 a year for the rest of her life. This annuity was valued at $27,353.80 according to the appropriate life expectancy tables.[3] The present controversy concerns the tax treatment of $20,147.20, the difference between the market value of the realty and the present value of the annuity. The Commonwealth asserts that this sum is taxable pursuant to Sections 221(a) and 225 of the Inheritance and Estate Tax Act

---

[1] These additional inheritance taxes amounted to $2,585.18.

[2] The other issue decided below which is not relevant to this appeal is whether the transfer into the joint names of the decedent and her daughter, Mary Monica Meluskey, of two bank accounts and the transfer of five shares of preferred stock by the decedent within two years of her death were fully taxable as being made in contemplation of death pursuant to Section 222 of the Inheritance and Estate Tax Act of 1961.

[3] Clara S. Meluskey was seventy-three years old when she entered this agreement.

of 1961, P. L. 373, Article II, 72 P.S. §2485-221(a) and 72 P.S. §2485-225. These sections provide as follows:

§221(a) Consideration. All transfers of property, specified in sections 222-226, which are made during his lifetime by a resident or a nonresident, to the extent that they are made without valuable and adequate consideration in money or money's worth at the time of transfer, are subject to tax under this act.

"§225. A transfer conforming to section 221(a) and under which the transferee promises to make payments to, or for the benefit of, the transferor ... during the remainder of the transferor's life is subject to tax under this act." The Commonwealth maintains that each and every requirement of these sections is satisfied in this case and that taxation is appropriate.

To the contrary, the executors insist that the $20,-147.20 is not subject to the state inheritance tax because the agreement expressly provided that it was being transferred as a gift independent of the annuity portion of the agreement. They concede that *if* the overall agreement consisted of only one transfer these sections would be applicable to impose a tax. However, they submit that two separate transfers were in fact made in the June 1, 1970, agreement. Specifically, they contend that a portion of the realty equal to the present value of the annuity was transferred in full and complete consideration for said annuity and that the remaining portion of the realty was conveyed as a gift and was so identified in the agreement. These contentions, if accepted, would have the following tax consequences: the annuity transfer would not fall within Section 221(a) since adequate consideration was given and, while the gift transfer would fall within Section 221(a), tax liability would have to be authorized by some section other than Section 225.[4]

---

[4] In this appeal, the Commonwealth has not attempted to demonstrate the applicability of any other section of the Inheritance and Estate Tax Act.

It is apparent that the lower court was inclined to agree with the executors for without directly discussing the applicability of Section 221 and Section 225, it proceeded as if two transfers had been made and concluded that since the gift portion was not made in contemplation of death, no further inheritance tax was due. We affirm that decision.

Two elements must combine to constitute a valid inter vivos gift: "An intention to make the gift then and there, and such an actual or constructive delivery at the same time to the donee as divests the donor of all dominion over the subject, and invests the donee therewith." *Brightbill v. Boeshore,* 385 Pa. 69, 74, 122 A.2d 38, 41 (1956). The Commonwealth has not heretofore questioned the donative intent of the decedent. The recital in the written agreement that the $20,147.20 was being conveyed as a gift clearly establishes that intent. Furthermore, this Court has held that when actual physical delivery of property is impractical and the donor delivers a written assignment, deed of gift or equivalent writing to the donee under circumstances which manifest the donor's present intention to pass right of possession to the donee, the delivery of the instrument operates as a constructive delivery so as to effectuate the gift. *Re Pyewell's Estate,* 334 Pa. 154, 5 A. 2d 123 (1939). Hence in the instant case, when the written agreement was signed by the parties, a bona fide gift of the $20,147.20 interest in the realty was effectuated. To hold otherwise would require an abrogation of well-established gift principles.

While the Commonwealth has cited numerous cases in its brief to justify the applicability of Section 221 and Section 225 herein, none of these cases involves a bona fide gift of the difference between the value of the realty and the value of the annuity. We also disagree with the Commonwealth's contention that, if Section 225 does not apply to the agreement in this case,

then there can never be a situation where the section would apply. As the executors concede, had the decedent transferred the entire real estate valued at $47,-500 solely in exchange for the annuity valued at $27,-353.80 without specifically making a gift of the difference, the difference between the market value of the real estate transferred and the consideration in the form of the annuity value would have been properly taxable under Section 225, assuming, of course, the absence of any other evidence sufficient to establish donative intent.

Two separate and independent transfers were made in the agreement, and tax treatment must be afforded accordingly.

Decree affirmed.

Mr. Justice EAGEN took no part in the consideration or decision of this case.

---

DISSENTING OPINION BY MR. JUSTICE POMEROY:

With all respect to the majority, I am obliged to dissent.

I cannot quarrel with the conclusion that the transaction between Mrs. Meluskey and her son possessed all the indicia of a valid inter vivos gift to the extent that the value of the property transferred exceeded the value of the annuity received. I am puzzled, however, by the importance which the majority attaches to this fact, since, as the majority recognizes, the scope of §221(a) is broad enough to encompass inter vivos gifts. That section subjects to tax "all transfers of property specified in sections 222-226, which are made during his lifetime by a resident or a nonresident, to the extent that they are made without valuable and adequate consideration in money or money's worth at the time of the transfer . . . ." Section 225, under which the Commonwealth seeks to assess a tax in the present case, provides that "a transfer conforming to section 221(a)

and under which the transferee promises to make payment to, or for the benefit of, the transferor . . . during the remainder of the transferor's life is subject to tax under this act".[1] I should think that donative intent and delivery, the earmarks of a valid inter vivos gift, would be present in *any* transaction of the sort described in §225, whether or not labeled as a gift by the parties, so long as they were aware of a disparity in value between the property transferred and the consideration received.[2] There is certainly nothing to suggest that §225 was intended to apply only where the parties were laboring under a mistaken impression as to the value of the property in question.

The basic question in this case is one to which the majority gives short shrift: whether or not the transaction in question involved more than one "transfer of property" within the meaning of §221 and §225. Mrs. Meluskey conveyed her property to a sole grantee by

---

[1] It is not necessary that the transfer be intended to take effect in possession or enjoyment at or after the death of the transferor in order for the transfer to be subject to tax under this section. *Compare* the Act of June 20, 1919, P. L. 521, art. I, §1, *as amended*, 72 P.S. §2301(c), *repealed* 1961, June 15, P. L. 373, art. XII, §1201, effective January 1, 1962.

[2] The majority suggests that "the difference between the market value of the real estate transferred and the consideration in the form of the annuity would have been properly taxable under section 225 . . . in the absence of . . . evidence sufficient to establish donative intent". *Supra* at 594. In the case of transfers from parent to child, we have consistently permitted an inference of donative intent from the bare facts of voluntary delivery to and retention by the transferee. *Brightbill v. Boeshore*, 385 Pa. 69, 122 A. 2d 38 (1956) ; *Chapple's Estate*, 332 Pa. 168, 2 A. 2d 719 (1938) ; *Northern Trust Co. v. Huber*, 274 Pa. 329, 118 A. 217 (1922) ; *Yeager's Estate*, 273 Pa. 359, 117 A. 67 (1922). This evidence of donative intent would be present in the case at bar no matter how the parties chose to describe their transaction, as indeed it would be present in any case where the parties were aware of a disparity in the value of the property exchanged.

means of a single deed. The characterization of the excess value of the property as a "gift" in the annuity agreement between the parties cannot obscure the unitary nature of this transaction. I am compelled to conclude that there was but a single transfer of property within the meaning of §221 and §225. "To hold otherwise would be to sacrifice substance for form and condone an obvious attempt to evade payment of the [tax imposed under §§221 and 225]." *Jones Estate,* 350 Pa. 120, 125, 38 A. 2d 30 (1944).