## Gottshall Estate

*Warren Y. Francis,* for appellants.
*Catherine R. Barone, Assistant Attorney General,* for Commonwealth.

SATTERTHWAITE, *J.*, Specially Presiding, November 14, 1977 — This is an appeal from an inheritance tax appraisement, the sole question being whether or not certain cash advancements by decedent to his two sons, with the understanding that they would pay interest thereon to him for the balance of his life, were taxable under sections 224 or 225 of the Inheritance and Estate Tax Act of June 15, 1961, P.L. 373, 72 P.S. §2485-224, 225.

Decedent died December 25, 1976, aged 95 years, survived by two sons, J. Richard Gottshall and Robert N. Gottshall, and leaving a will by which he gave his entire estate to be divided equally between them.

Beginning in 1946, decedent had made various advances to his son Richard in amounts ranging from $300 to $650 on occasions when the latter needed cash for the purchase of furniture or to pay college expenses for his daughter. In May of 1973, Richard purchased a trailer, needing $9,000 which decedent advanced for the purpose. On this occasion, Richard and his wife executed a promissory note to decedent as payee in the amount of $10,650, by its terms payable on demand, with interest at five percent per annum; the face amount of this note included the prior advancements and the same was reduced to $9,750 by four subsequent repayments to decedent in 1974 and 1975 when the granddaughter reimbursed her father for certain of the sums so paid for her college expenses. There were five subsequent advances of funds by decedent to Richard similarly so documented by demand notes: $1,200 in August 1975, $1,100 in October 1975, $1,200 in January 1976, $1,500 in June 1976, and $1,000 in September 1976. The total unrepaid face amounts of the notes of Richard and his

wife as of decedent's death aggregated $15,750.

On January 20, 1969, decedent made a similar advance to Robert in the amount of $7,000, taking his demand note therefor with interest at five percent per annum and bearing the endorsement "Evidence of loan for $7,000 for '477'." (The latter reference was apparently to the circumstance that the occasion for this advance was Robert's purchase of premises known as 477 Main Street in Collegeville.)

At his death, decedent was the owner of a farm, valued at $96,000, a checking account of some $4,600 and various savings accounts aggregating in excess of $32,000 (the latter held as joint tenant with his two sons with right of survivorship). The Commonwealth in its appraisement of decedent's taxable estate also included the $22,750 represented by the unpaid face amounts of the sons' notes aforesaid, and the present appeal is concerned solely with that inclusion.

Both sons testified that their father gave them the respective amounts of money purely as advancements and with the express understanding that they would not be repaid to him in his lifetime since there would accordingly be that much less for them to inherit later on, although he did expect to receive (and the sons in fact did pay) interest on their respective amounts at five percent for the balance of his lifetime. Robert further testified that it was his idea, not his father's, that the sons execute the various notes in question, to document and memorialize the respective advances so that there could be no possible question about the same between them or their spouses after their father's death. In this connection, it may be noted that Robert's note was physically kept in decedent's bank safe deposit

box, whereas Richard's notes were held by Robert in his real estate office. The $900 in principal repayments endorsed on Richard's 1973 note were made, according to Richard, purely because his daughter had repaid him and over decedent's remonstrance that he did not expect to be repaid.

The present proceedings may be disposed of in disregard of the arguable bar of the parol evidence rule, which, had the question been raised, as in an adversary proceeding to collect these notes, might well have precluded appellants' testimony as to the oral understandings which so radically contradicted the unambiguous and categoric written promises to repay the face amounts of these several notes on demand. Even if the sons' testimony be accepted in full, the principal amounts represented by these "memoranda" would still properly be held taxable under the specific provisions of section 225 of the Inheritance and Estate Tax Act of 1961, 75 P.S. §2485-225, which provides as follows: "A transfer conforming to section 221(a), and under which the transferee promises to make payments to, or for the benefit of, the transferor or to care for the transferor during the remainder of the transferor's life, is subject to tax under this act."

Contrary to appellants' argument, these advances were transfers "without valuable and adequate consideration in money or money's worth," and hence within the ambit of transfers "conforming to section 221(a)." The obligation to pay interest, and that alone, is certainly no more than an illusory, and not an adequate, "consideration in money or money's worth" for the transfer of the principal amounts within the contemplation of section 221(a).

Section 307 of the act exempting advancements

not in contemplation of death is of no effect here in view of the transferees' agreements to pay interest for the transferor's life and the specific applicability of section 225 by reason thereof. Nor is Krause's Estate, 325 Pa. 479, 191 Atl. 162 (1937), applicable even if it be conceded that the actual money advanced unquestionably became the sons' absolute property, and that the obligation to pay interest was their purely personal obligation and not derived out of, or as the product of, the funds transferred; section 225 of the 1961 act simply was not in the law at the time when Krause was decided: Brady Estate, 5 Fiduc. Rep. 300 (1955), and Zug Estate, 9 Fiduc. Rep. 241, 18 D. & C. 2d 537 (1959), were likewise decided under pre-1961 law.

Meluskey Estate, 455 Pa. 589, 317 A. 2d 607 (1974), was concerned with the 1961 act. In that case, decedent transferred realty worth $47,500 to her son in return for his promise to pay her an annuity of $4,000 for life. The present worth of the annuity based on decedent's life expectancy at the time of the transfer was $27,353.80. The Commonwealth conceded that the annuity agreement constituted good and valuable consideration up to the present value thereof for the transfer but sought to tax the difference of $20,147.20 under section 225. The court held that the latter aspect of the transaction, treated as a separate and distinct element by the express terms of the parties' agreement pursuant to which the transfer was implemented, was a pure gift in itself involving no promised payments to the grantor and hence not within section 225. The opinion specifically pointed out, 455 Pa. at 593, that had there been but one lone and entire transaction whereby the realty had been transferred solely in return for the (inadequate) annuity

agreement without more, and with no specific contractual or other treatment of the difference in value as a gift, the inadequacy of the value of the realty as related to the value of the annuity would have been taxable under section 225. Compare Kelly Estate, 18 Fiduc. Rep. 501, 46 D. & C. 2d 21 (1968); Stump Estate, 21 Fiduc. Rep. 264 (1971).

In the instant case, since the sons' contractual undertakings were entirely illusory as regards the principal of the funds advanced, there was no offsetting consideration in money or money's worth, so far as the record discloses, and the entire principal amounts were taxable. Accordingly, the appraisement was right and the within appeal must be denied and dismissed.

## FINAL DECREE

And now, November 14, 1977, for the reasons stated in the foregoing opinion, the subject inheritance tax appraisement is hereby approved and affirmed, and the within appeal therefrom is hereby denied and dismissed, costs to be paid by appellants.