## Klingelhoeffer Estate

*Frederick C. Horn*, for appellant.
*Catherine R. Barone, Assistant Attorney General*, for Commonwealth.

SATTERTHWAITE, *J., S.P.*, January 9, 1979—The problem presented by this appeal from the assessment of Pennsylvania inheritance tax is the determination of the value of the "consideration in money or money's worth" for decedent's inter vivos transfer of certain real estate which was arguably taxable under sections 221 and 225 of the Inheritance and Estate Tax Act of June 15, 1961, P.L. 373, as amended, 72 P.S. §§2485-221, 2485-225.

By deed dated May 14, 1976, Clotilde Klingelhoeffer (hereinafter, decedent) conveyed to Oliver A. Dilworth and Edna M. Dilworth, his wife (hereinafter, Dilworths), a certain farm property in Upper Salford Township, absolutely and in fee simple. As the bargained consideration therefor, the

Dilworths agreed in writing "to provide a home for [decedent] for as long as she lives in a manner and fashion as if she was a member of the family." Decedent was then 84 years of age. She died on April 3, 1977, less than 11 months later.

Decedent had lived alone in the farmhouse on the subject property following the death of her husband in 1967 until 1971, when she moved in with the Dilworths (no relation), who had been lessees and occupants of the tenant house on the farm for many years. Decedent continued to reside in the Dilworth household thereafter, except for a short period of hospitalization, until her death. The Dilworths conscientiously carried out their contractual undertaking, providing decedent with the home and companionship which she had sought, and furnishing her food and sustenance at their table as one of their family. While decedent was in fairly good health for her age, she required constant attention, could not be left alone, and was completely reliant upon the Dilworths for transportation to such places as her doctor's office and the like.

The actual value of the subject real estate as of the date of decedent's transfer thereof to the Dilworths was not disputed and was established at $47,000. In determining the Pennsylvania inheritance tax due from the estate, the Commonwealth included that valuation as a taxable transfer, reduced by the then $6,254.76 value of an assumed life estate reserved to decedent (based under section 502 of the Inheritance and Estate Tax Act of 1961 apparently on decedent's mortality table life expectancy coupled with the interest rate of three and one-half percent per annum therein prescribed), or a tax value appraisal of $40,745.24. Such appraisal was apparently made under section

224 of the act on the theory that decedent had reserved a life interest in the real estate and that the consideration for the conveyance of the remainder was the Dilworths' promise to care for her which, in the absence of proof of their actual expenditures for that purpose, could only be measured by the section 502 value of the life estate, with the excess value being subject to tax.

This approach was patently erroneous. Decedent had reserved no life interest in the realty. She had tranferred the same absolutely and without qualification. She had done so in consideration of the Dilworths' promise to provide for her for the balance of her lifetime, a contractual undertaking on their part and not the reservation of any estate in the real property. Such transfer, accordingly, would come under section 225 of the Inheritance and Estate Tax Act, and its taxability would be determined by the criteria laid down in section 221(a), which provides: "All transfers of property, specified in sections 222-226, which are made during his lifetime by a resident or a non-resident, to the extent that they are made without valuable and adequate consideration in money or money's worth *at the time of transfer*, are subject to tax under this act." (Emphasis supplied.)

The Commonwealth does not now purport to justify the rationale upon which the appraisal was made. It is contended, however, in support of the result thereby reached that the value of the Dilworths' promise to care for decedent, concededly to be deducted from the market value of the realty, may be measured only by what they in fact did expend for such care during the relatively short period for which she actually lived after the trans-

fer, citing Kelly Estate, 18 Fiduc. Rep. 501 (1968), and Stump Estate, 21 Fiduc. Rep. 264 (1971). Since appellant did not document such costs and expenses by proof of actual expenditures, it is contended that the burden of proof of error has not been sustained on appeal and that the assessment accordingly should stand.

On appellant's behalf, however, it is urged that the value of the Dilworths' undertaking should be computed on an actuarial basis by multiplying the fair and reasonable per diem value of their services for decedent by decedent's anticipated mortality table life expectancy in days as of the date of the deed transfer.

The latter rationale is hereby adopted as the controlling basis for decision herein. Section 221(a) of the statute refers to valuation of the consideration in money or money's worth "at the time of transfer," a standard of reference which would inherently exclude subsequent actualities and, instead, would require the then best estimate of future expectancies, a process which could most properly be accomplished by the use of recognized mortality tables. This court respectfully declines to follow the holding to the contrary by the Crawford County Court in Kelly Estate, supra; compare the discussion of the authors relative to that decision in Grossman and Smith, Pennsylvania Inheritance and Estate Tax, §225-2 (1971). Stump Estate, supra, likewise cited by the Commonwealth, is no precedent either way since the estate was there seeking to have the value of the taxable transfer reduced only by actual expenditures and no mention was made of the expectancy valuation question herein posed.

The result reached herein would seem to be implicitly sanctioned by the reasoning affirmed in Meluskey Estate, 455 Pa. 589, 317 A. 2d 607 (1974). In that case decedent transferred real estate valued at $47,000 to her son 10 months prior to her death, under an agreement which was construed to have a two-fold character: the first consisting of the son's promise to pay his mother an annuity of $4,000 for life (computed actuarially to be of a present value of $27,353.80) as the stated consideration for the transfer of that part of the realty having a value of $27,353.80, and the second being in the nature of a gift (found not to be in contemplation of death) of the remaining fractional interest in the realty having a value of the $20,147.20 balance of the entire value thereof. The court held that the double aspect of the transaction should be recognized; that the $27,353.80 portion was a section 225 transfer but the consideration of the son's promised annuity was full and fair and exactly counterbalanced that part of the transaction; and that the separately specified transfer of the $20,147.20 portion was an outright gift and not a section 225 transfer for an inadequate consideration. The court saw no problem relative to the first aspect in the circumstance that the mother lived only long enough to enjoy one annuity payment of $4,000.

Appellant's evidence at the hearing herein consisted solely of the testimony of Oliver A. Dilworth who described at length the nature of the services provided decedent by his wife and himself. His estimate of the value thereof at $30 to $35 per day stood uncontradicted, and the court hereby finds such value to be at the lesser of the two estimates, to wit, $30 per day. Appellant would apply a life ex-

pectancy for decedent of 4.60 years or 1,679 days, but the source of this figure is not in evidence. The court does, however, take judicial notice of the valuation directive and accompanying expectancy tables promulgated by the Pennsylvania Department of Revenue in 1962, 12 Fiduc. Rep. 223, at 230, and regards the situation as though the Dilworths' undertaking had been the equivalent of a promise to pay decedent $30 per day or a $10,950 annuity ($30 times 365 days). For an annuity for the life of a person aged 84 years, the table referred to would give a present value factor of 3.8023, resulting in a computed total value of the Dilworths' promises in the present case of $41,635.18. If this be deducted from the uncontradicted market value of the real estate of $47,000, the resulting difference of $5,364.82 is the "extent" to which the subject section 225 transfer was made "without valuable and adequate consideration in money or money's worth at the time of transfer" in the words of section 221(a).

## FINAL DECREE

And now, January 9, 1979, for the reasons stated in the foregoing opinion, the within appeal is hereby sustained; the appraisal taxable value of the within mentioned transfer of realty by decedent to Oliver A. Dilworth et ux. for purposes of Pennsylvania inheritance tax is hereby fixed at $5,364.82; the record is hereby remanded to the register of wills for revision and determination of the inheritance tax assessment fixed in accordance with the foregoing opinion.