## Isherwood, Exr., *v.* Springs-First National Bank.

Argued April 19, 1950. Before DREW, C. J., STERN, STEARNE, JONES and BELL, JJ.

*J. Perry Eckels,* for appellant.

*A. Grant Walker,* with him *J. A. Bolard* and *Humes & Kiebort,* for appellee.

OPINION BY MR. JUSTICE JONES, June 26, 1950:

Jennie Isherwood of Cambridge Springs, Pa., died testate on November 16, 1943. She appointed as executors of her will her son Earl and her daughter, Ruth Dowler, to whom letters testamentary were granted. She also left another daughter to survive her.

On September 1, 1934, Mrs. Isherwood, accompanied by her husband and her daughter, Ruth Dowler, had gone to the Springs-First National Bank in Cambridge Springs and there opened a savings account with money of her own in the sum of $2500 in the joint names of herself and Ruth Dowler. After the probate of Mrs. Isherwood's will, which was not found for almost two years after her death, a dispute arose between Mrs. Dowler and her co-executor, Earl Isherwood, with respect to this bank account. The latter claimed it was part of the deceased mother's estate, while Mrs. Dowler claimed it was her own individual property as the surviving joint tenant of her mother. Earl, acting alone as executor of his mother's will, sued the bank to recover the fund for the decedent's estate. The bank answered, denying any pecuniary interest in the account, and impleaded as an additional claimant of the money Mrs. Dowler who was ruled to file her claim in the proceeding, which she did. An issue to try title to the account was thereupon framed with Ruth Dowler, the claimant, as plaintiff, and Earl Isherwood, executor of the mother's will, as defendant.

Upon trial of the issue, the jury rendered a verdict in favor of the plaintiff. Subsequently, the learned court below entered judgment for the defendant n. o. v. and the plaintiff took this appeal. The question involved is whether the evidence adduced by the plaintiff is legally sufficient to sustain the jury's finding.

The documentary evidence of the creation of the account consisted of a deposit slip showing a deposit in the bank's savings department on September 1, 1934, of $2500 "By Mrs. Jennie Isherwood and Ruth Dowler." The slip had been prepared by the bank clerk on duty at the time who died before this controversy arose. To evidence the deposit, the bank issued a pass book which bore the designation "Mrs. Jennie Isherwood or Ruth Dowler"; Mrs. Isherwood retained possession of the pass book until her death. No signature card was offered in evidence nor was there any evidence that one had ever been signed by either Mrs. Isherwood or Mrs. Dowler. The bank's ledger sheet containing the account was received in evidence and showed on its face in typewriting, following the printed word "Name", "Isgerwood, Jennie Mrs. or Ruth Dowler." Above the typewritten names there was typed in a lighter and different type, —"Payable to either or the survivor as joint tenants and not as tenants in common." The learned court below in its opinion on the motion for judgment n. o. v. says that "It is not clear from the evidence when these latter words were written on, but there was evidence that it was done by some bank clerk after the death of Mrs. Isherwood." Our examination of the record fails to disclose any evidence of sufficient probative force to support a finding to such effect. And, in any event, the jury's verdict requires that the writing and notations on the bank's ledger sheet be taken at face value as having been made in the ordinary course of business by someone acting for the bank. There were additional deposits to the account and some withdrawals therefrom made dur-

ing Mrs. Isherwood's lifetime, but there is no evidence as to who made them except for a $50 deposit on March 1, 1935, which was made by Mrs. Isherwood.

In addition to the documentary evidence relating to the account in the Springs-First National Bank, the claimant produced as a witness the cashier of the First National Bank at Edinboro, which was some seven or eight miles distant from Cambridge Springs. That witness testified that in the late morning of September 1, 1934, Mrs. Isherwood, her husband and Mrs. Dowler, the claimant, came to his bank at Edinboro for the purpose of opening a savings account which was done with money furnished by Mrs. Isherwood in the sum of $2500; that Mrs. Isherwood ". . . stated she wanted to open a joint account with the bank and with her daughter . . .''; and that he got a signature card and read it to them. He further testified that Mrs. Isherwood wanted the account so fixed that "in case of her death it would go to the daughter" and that she "understood" that either one of them could draw it. The witness also said that Mrs. Isherwood told him that she had done "the same thing" at the First National Bank in Cambridge Springs. When asked, on cross-examination, what the decedent's *own* words were, he testified as follows: "Q. She simply told you she had opened a like account at Cambridge Springs? A. A joint account. Q. Between her and Ruth Dowler? A. That's right. Q. That is all she said, was it? A. That is right. . . . Q. Can you give us *any specific language that Mrs. Jennie Isherwood used* when she told you she had opened a joint account in the Cambridge Bank? A. Nothing any further than she told me that she was opening a joint account in the Cambridge Springs Bank, too, she opened it before she came into the bank at Edinboro." (Emphasis supplied.) Mrs. Dowler was disqualified as a witness under the Evidence Act of 1887 and Mr. Isherwood had predeceased his wife. The status of the account in the Edinboro bank is not here involved.

The evidence relied upon by the claimant in her effort to support the jury's implied finding that the bank account in suit was a joint estate with the right of survivorship fails to meet the legal requirements in the circumstances. While the Act of March 31, 1812, P. L. 259, 5 Sm. L. 395, Sec. 1, 20 PS §121, merely limits the legal presumption of survivorship theretofore attending a joint estate and ". . . the freedom of the parties to provide by agreement or otherwise that the right of succession, which existed previous to the act, should apply" remains unrestricted, ". . . the question [of survivorship as an incident of a joint estate] is now one of intent, and . . . [it is] necessary . . . that the intent be expressed with sufficient clearness to overcome the presumption arising from the statute: *Leach's Est.*, 282 Pa. 545, 549"; *Mardis v. Steen,* 293 Pa. 13, 16, 141 A. 629. See also *Haggerty's Estate,* 311 Pa. 503, 506, 166 A. 580; *Montgomery v. Keystone Savings & Loan Association,* 150 Pa. Superior Ct. 577, 579-580, 29 A. 2d 203; and *Crist's Estate,* 106 Pa. Superior Ct. 571, 580, 162 A. 478.

In *Flanagan v. Nash,* 185 Pa. 41, 45, 39 A. 818, on the margin of the deposit book, opposite the names of the depositors, were the words "Either to draw" and there was stamped on the book the following, "Either party to draw, and in case of death of either of them, the survivor shall have full power to withdraw the deposit as if the same had been duly transferred to such survivor." It was held that a right of survivorship was *not* thereby created. In *Mardis v. Steen,* supra, where a claim of joint estate with right of survivorship was sustained, Mr. Justice FRAZER pertinently distinguished the *Flanagan* case, supra, by pointing out that in that case ". . . there was no evidence of an agreement, either oral or in writing, other than the mere fact of joint deposit" and that ". . . both of these memoranda [above mentioned] were made by an officer of the bank without evidence that the notations were made pursuant to direction given by

decedent [the original depositor]." The case of *Zellner's Estate,* 316 Pa. 202, 205, 172 A. 715, points out that ". . . in the cases where a joint tenancy with the incident of survivorship was held to have been created, there was affirmative evidence that it was the intention of the parties that the account should be so held. . . . On the other hand, in the cases cited where a joint tenancy was held not to have been created, the evidence was insufficient to show any intention to give to the party whose name was added any present beneficial interest in the fund."

*Mader v. Stemler,* 319 Pa. 374, 376-379, 179 A. 719, clearly marks the distinguishing requirements for the creation of a joint account with right of survivorship and one without such right. In the *Mader* case, a father had a savings account in each of two banks. With respect to the one account, he changed the name of the depositor from himself to himself and a daughter as joint depositors and likewise, he changed the name of the depositor of the other account from himself to himself and another daughter as joint depositors. Stamped on the signature card for the account first above mentioned and signed by both depositors was an agreement conferring upon each the right to draw individually on the account during the lives of the depositors with the right in the survivor to any balance remaining upon the death of the other depositor. In the case of the other account which had been changed on the ledger sheet of the bank from the name of the father to the father and daughter and had been "apparently so entered on a later passbook", there was no signature card or other written agreement between the depositors conferring on the daughter a present individual right in the account. In an opinion by Mr. Justice LINN for this court it was held that the right of survivorship was an incident of the joint account first above mentioned but not in respect of the other joint account for the reason that, in the latter instance,

—"There is no evidence that would support a gift executed 'by assignment or by other writing which ... would indicate a present intention to pass right of possession to the donee' (Mardis v. Steen, 293 Pa. 13, 15, 141 A. 629), manual delivery being impracticable", further citing in support of the ruling *Flanagan v. Nash,* supra; *Zellner's Estate,* supra; *Crist's Estate,* supra; and *Gallagher's Estate,* 109 Pa. Superior Ct. 304, 167 A. 476. Cf. also *Kata Estate,* 363 Pa. 539, 541, 70 A. 2d 351.

Applying the foregoing principles to the facts of this case, it follows that the claimant failed to produce evidence of the probative character required to sustain her burden of proving that the decedent affirmatively expressed or evidenced an intention to give her daughter at the time of the opening of the account in the Springs-First National Bank a presently vested interest therein or that she executed any such intention by an equivalence of delivery. Indisputably, there was no actual delivery of the pass book; Mrs. Isherwood retained possession thereof throughout her lifetime: see *Crist's Estate,* supra. Nor was there either signed signature card or written agreement of the parties with respect to the ownership of that savings account: see *Mardis v. Steen* and *Mader v. Stemler,* supra. Just as in the *Flanagan* case, the memoranda on the bank's ledger sheet ". . . were made by an [employee] of the bank without evidence that the notations were made pursuant to direction given by decedent."

The learned trial judge did not err in rejecting the plaintiff's exhibit No. 5, being Mrs. Isherwood's signature card and the deposit agreement on the reverse side thereof signed by her and her daughter with respect to the account in the *Edinboro* bank. In no way was that exhibit competent proof of any agreement between Mrs. Isherwood and her daughter and the *Springs-First National Bank* relative to the savings account in *that* insti-

tution. The only purpose the proffered exhibit could have served would have been to corroborate the cashier of the Edinboro bank as to his testimony in regard to the agreement with his bank. Admission of the exhibit for that limited purpose rested largely in the discretion of the trial judge. Anyway, the jury found for the plaintiff so that the exclusion of the exhibit did the plaintiff no harm.

We note from the docket entries that, following the lodging of this appeal, steps were taken below to correct the judgment as liquidated against the bank, the stakeholder in the interpleader. All we can do now is affirm the judgment from which the appeal was taken. Any appropriate corrections thereof in form or amount can be made by the parties under the supervision of the court below after the record has been remanded.

Judgment affirmed.

Mr. Justice BELL dissents.