## Nemcek v. Central City National Bank (et al., Appellant).

Argued November 13, 1958. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, ERVIN, and WATKINS, JJ. (WOODSIDE, J., absent).

*Frank A. Orban, Jr.,* for appellant.

*Archibald M. Matthews,* with him *Robert W. Critchfield,* for appellee.

OPINION BY GUNTHER, J., March 18, 1959:

This appeal involves the disposition of a joint savings account where one of the parties to the account died. Essentially, it is a contest between the survivor and the estate of the deceased.

On January 31, 1953, Julia Gergey deposited $1,-000.00 in the Central City National Bank in a savings account in the name of herself and her daughter, Bertha Nemcek, also known as Bertha Nemchik, with incidents of survivorship. At the time the account was opened, no pass book was issued because the bank did not have any on hand. A deposit slip was prepared in duplicate, however, and a duplicate was given to Julia Gergey at that time. The signature card was signed by Mrs. Gergey at the time of the deposit and was turned over to her to obtain the signature of her daughter. This was done sometime later, and the signature card was returned to the bank.

The signature card contained the usual printed contract of a joint account with the right of survivorship. However, in making up the account, the teller, for some unknown reason, captioned the account "Julia Gergey, P. O. D. Bertha Nemchik." Both the signature card and the duplicate deposit slip were turned over by Mrs. Gergey to her daughter, Bertha Nemcek, who signed

and returned the card in the presence of witnesses and kept the duplicate deposit slip. No money was ever withdrawn from the account by either of the joint owners until after the death of Mrs. Gergey on April 5, 1953, when demand for the money was made upon the bank by the survivor. It further developed that no pass book was ever issued on this account by the bank for the reason that, under its rules, the duplicate deposit slip had to be returned before a pass book would be issued.

On February 15, 1953, about two weeks after the said joint account was opened, Julia Gergey made her will in which she divided her property into five shares, leaving one share to her daughter, Bertha Nemcek. No mention was made in said Will of the joint account previously created.

After the death of her mother, Bertha Nemcek gave formal written notice for the withdrawal of said account as survivor. Subsequent to the notice, however, the bank received a letter from the estate of Julia Gergey, wherein the funds were also claimed by the estate. Based upon this letter, the bank refused to honor the request of the surviving joint tenant, and in November, 1953, a complaint in assumpsit was filed against the bank. The bank interpleaded the estate, disclaimed any right in the fund and paid the same into the office of the prothonotary. Thereafter, Joseph Gergely, individually and as executor for the estate, filed a complaint, alleging that no gift was made and that under the contract with the bank, the money was payable to the estate since the will of the decedent revoked all prior testamentary dispositions.

The case was heard by the court below without a jury and, after concluding the testimony, rendered judgment in favor of the appellee, Bertha Nemcek. From this adjudication, this appeal followed.

The only question to be decided on this appeal is whether the account is actually a testamentary disposition subject to revocation by a subsequent will, or a valid inter vivos gift which is unaffected by a later will. The appellant, Joseph Gergely, relies principally on the fact that the account was captioned "Julia Gergey, P. O. D. Bertha Nemchik," and, therefore, was a testamentary disposition. The bank teller testified that the letters "P. O. D." had the meaning of "payable on death." However, this contention ignores the fact that the signature card contained the terms of the joint deposit and the fact that the card was signed by both Mrs. Gergey and Bertha Nemchik. If the account was intended as an individual account with a gift over upon death of the depositor, it is difficult to see why the signature of Bertha Nemchik was necessary, or why Mrs. Gergey took the card, after signing the same at the bank, and give it to her daughter for signature. Furthermore, the signature card contained the following printed provision: "Each of the undersigned is the owner of the whole of this account and each shall have full power to draw against it; and in case of the death of either or any of the undersigned, such power shall continue to the survivor or survivors as fully as if this account had been originally in the name of such survivor or survivors; . . ."

In the recent case of *Martella Estate,* 390 Pa. 255, 135 A. 2d 372, our Supreme Court said: " 'To constitute a valid gift inter vivos . . ., two essential elements are requisite: An intention to make an immediate gift and such an actual or constructive delivery to the donee (a) as to divest the donor of all dominion and control, or (b) if a joint tenancy is created, as to invest in the donee so much dominion and control of the subject matter of the gift as is consonant with a joint ownership or interest therein.' " In this case, the testimony is

clear that Mrs. Gergey, upon creating the joint account, turned over all indicia of ownership to her daughter and never exercised any dominion or control over it during her lifetime. Furthermore, in the case cited, the Court cited a number of cases involving savings accounts in joint names with right of survivorship and concluded that where both parties executed a joint signature card or agreement, such evidence was sufficient to create a valid inter vivos gift.

We therefore conclude that the account here involved was not a testamentary disposition but a valid inter vivos gift, and that the will executed approximately two weeks later did not revoke the gift.

Judgment affirmed.