## Hahn Estate.

Argued November 23, 1960. Before BELL, MUSMANNO, JONES, COHEN, BOK and EAGEN, JJ.

*Joseph A. Hagerty,* for appellants.

*F. Raymond Heuges,* for appellees.

OPINION PER CURIAM, January 16, 1961:
Decree affirmed. Costs on appellants.

———

DISSENTING OPINION BY MR. JUSTICE BELL:

Decedent left an estate of approximately $11,000 personalty and $9,600 realty, namely, a house at 623 E. Westmoreland Street, Philadelphia, which was found by the lower Court to have a value of $6,000, and a house at 3256 Hartville Street, Philadelphia. In her Will she left her residuary estate to her sister, Mrs. Heilmann, for life, and at her death to four named nieces and nephews. The lower Court awarded the house at 623 E. Westmoreland Street to the Lienerts.

Mr. and Mrs. Lienert claimed that they entered into an oral contract with the decedent when she was 88 years old, under the terms of which she would convey the Westmoreland Street house to them, reserving a life estate in herself, in consideration of the Lienerts providing a home and care for her, without charge, for the rest of her life. They also presented a claim for bed and board which was subsequently dismissed by the Court for want of proof. They cared for her for two months and five days, after which she was taken to a hospital and several months thereafter died. For two months' care they received one-third of her estate.

A claim against a dead man's estate must be proved by clear, precise and convincing evidence: *Liggins Estate,* 393 Pa. 500, 143 A. 2d 349; *Martella Estate,* 390 Pa. 255, 135 A. 2d 372; *King Estate,* 387 Pa. 119, 126 A. 2d 463; *Grossman Estate,* 386 Pa. 647, 126 A. 2d 468; *Brightbill v. Boeshore,* 385 Pa. 69, 122 A. 2d 38; *Stafford v. Reed,* 363 Pa. 405, 70 A. 2d 345; *Snyderwine v. McGrath,* 343 Pa. 245, 22 A. 2d 644; *Leadenham's Estate,* 289 Pa. 216, 137 A. 247.

When a claim is based on an alleged oral agreement to leave part or all of a person's property to another for care or similar services, the claim should be very carefully scrutinized and should be allowed only where the evidence is not only clear and precise, but absolutely convincing. The reason is obvious. To hold otherwise would open *wide* the door to fraud, and create an easy subterfuge for avoiding the Wills Act.

Mrs. Heilmann, with whom Mrs. Hahn had been living, was 85 years old, ill and no longer able to take care of Mrs. Hahn. Mrs. Heilmann therefore wanted the Lienerts to take care of her. The claimants failed to offer even a scintilla of evidence to prove the alleged contract on which they claim, namely, an oral agreement between Mrs. Hahn and the Lienerts to give them the Westmoreland Street property after her death in consideration of their promise to provide a home and take care of her free of charge for the rest of her life. Instead of proving the alleged oral contract they attempted to prove a deed, together with a donative intent, which they erroneously believe is equivalent to "delivery". I would hold that their claim to the house by virtue of the aforesaid oral contract is completely devoid of merit.

The issue which was fought out concerned the deed from Mrs. Hahn to the Lienerts. We shall discuss this issue, even though, in our judgment, it is irrelevant.

I assume, although neither the Orphans' Court nor any of the parties specifically mention it, that the Lienerts base their claim under the theory of a gift from Mrs. Hahn to them. In order to validate the Lienerts' claim to the Westmoreland Street property through the deed there are two indispensable requisites, (1) a donative intent, i.e., an intent to make a gift then and there, and (2) a delivery of the deed, either actual or constructive: *Swartz v. Hafer,* 354 Pa. 320, 47 A. 2d 224; *Herr v. Bard,* 355 Pa. 578, 50 A. 2d 280; *Sears v. Scranton Trust Co.,* 228 Pa. 126, 77 A. 423; *Unruh v. Lukens,* 166 Pa. 324, 31 A. 110; *Chambley v. Rumbaugh,* 333 Pa. 319, 5 A. 2d 171. Accord: *Martella Estate,* 390 Pa. 255, supra; *King Estate,* 387 Pa., supra; *Grossman Estate,* 386 Pa., supra; *Brightbill v. Boeshore,* 385 Pa., supra.

The lower Court apparently proceeded on the theory that all that was needed to validate the deed to the Lienerts, since it was signed and witnessed, was a donative intent on the part of the decedent. This, as we have seen, is not the law. The law is accurately stated in *Swartz v. Hafer,* 354 Pa., supra, where the Court, speaking through Mr. Justice (now Chief Justice) JONES, said (page 325): ". . . in no event, was there a delivery. Where a deed is left with a third party who is attorney for both parties to the deed, a delivery does not take place unless there is 'an express understanding that it was to be handed to the grantee': Lewis v. Merryman, 271 Pa. 255, 258, 114 A. 655." A fortiori would this be so when, as here, the delivery was only to the *decedent's attorney* and there was neither a direction nor request nor an express understanding *between Mrs. Hahn and her attorney* that it was to be handed by him then or at any subsequent time to the grantees.

In *Chambley v. Rumbaugh,* 333 Pa., supra, the Court, speaking through Mr. Justice HORACE STERN,

said (page 322): "It is not necessary that delivery of a deed should be to the grantee himself, but it is sufficient if it be delivered to a third person to be given by him in turn to the grantee at some specified time, as, for example, upon the death of the grantor. Of course, the mere fact that after the grantor's death a deed is found in the possession of a third person raises no presumption of delivery to the grantee, inasmuch as it may have been entrusted for some purpose wholly dissociated from an intent to transfer title. *Nor is delivery accomplished by the mere handing of a deed to a stranger without instructions to deliver it to the grantee:* Hannah v. Swarner, 8 Watts 9, 11; Thompson's Executors v. Lloyd, 49 Pa. 127; Sears v. Scranton Trust Co., 228 Pa. 126, 141. *If, however, it appear that such instructions were given, or if the attendant facts and circumstances indicate that the intent of the grantor was that delivery should be made by the third person to the grantee, and if the grantor parted with control,* such delivery is in all respects valid, . . . ."

What was the clear, precise and convincing evidence produced by claimants to prove (a) intent, and (b) delivery?

Mrs. Heilmann telephoned Mrs. Hahn's lawyer, Mr. J. J. McCarthy, and asked him to draw a deed to the Westmoreland Street property from Mrs. Hahn to Mr. and Mrs. Lienert and to bring it to her (Mrs. Heilmann's) house. Mrs. Heilmann was a sick woman who died within two months. She undoubtedly wanted the Lienerts to take care of Mrs. Hahn and to receive Mrs. Hahn's Westmoreland Street house. However, *Mrs. Heilmann's wishes or intention are not the test.*

After Mr. McCarthy prepared the deed he came to Mrs. Heilmann's house to see Mrs. Hahn on the late

---

* Italics throughout, ours.

afternoon of February 8, 1957. Mrs. Heilmann, her son Frank X. Heilmann, and an attorney, Sidney E. Herold, who was also a notary public, were present. Mrs. Hahn had for years been hard of hearing. Although Mr. McCarthy had been Mrs. Hahn's attorney since 1949, she did not know him and thought he was the doctor. Mrs. Hahn never said one word to Mr. Mc-Carthy or even nodded her head to indicate that she either understood what she was doing or that she wanted the deed delivered to the Lienerts. Mr. McCarthy's testimony on this point was as follows: "I tried to explain to her in layman's language that this was a document which if she signed it would convey the title to her house at 623 E. Westmoreland Street to Evelyn and Arthur Lienert. . . . I had no indication from her, either from a spoken word or from a nod or headshake or anything like that that she understood what I was saying. . . . Then Mrs. Heilmann came over and said to her, 'Sign the paper' in a loud voice. . . . When Mrs. Heilmann came over and said, 'Sign the paper', she said, 'All right,' and I handed her the pen, and I gave her the pen and she signed it, . . . ." Later on Mrs. Hahn handed the deed to McCarthy, who witnessed it in order, he said, to show that he was present. *He testified that she never asked him to deliver the deed or to hold it for Mr. and Mrs. Lienert.** He kept the deed in his safe because "I don't think she understood what it was. Q. Now, don't you feel that her actually signing the deed was an affirmation by action rather than words? A. No, I don't feel that. I feel that she signed the deed only because her sister asked her to. Q. And you have no reason for saying that other than her silence? A. My reason is because she had for about ten minutes persisted in not signing it, and then when

---

* The Orphans' Court described Mr. McCarthy as "a highly regarded member of the bar of this Court."

Mrs. Heilmann came over and said 'sign it', she signed it."

Mr. McCarthy did not have the deed acknowledged or recorded or delivered, and Mr. Herold, a lawyer and a notary public, who was present for the purpose of taking Mrs. Hahn's acknowledgment did not take the acknowledgment. McCarthy did not tell Mrs. Hahn or Mrs. Heilmann that he felt Mrs. Hahn did not understand what she was doing. The reason he gave is as follows: "Q. And the only reason for your thinking so was because Mrs. Hahn was silent? THE COURT: No, I will answer it for him; the reference to him as the doctor. BY MR. HEUGES: Q. All right, that and the subsequent silence? A. Well, it was more than silence. There was a very unusual blank expression on her face. She kept turning her head from side to side, and she would look at me and she would look at Mrs. Heilmann, and it is the type of expression that is commonly described as a blank stare. Q. I guess a lot of us are guilty of blank stares, aren't we? A. Well, I guess we are, but I think under those circumstances it was an indication to me that she was not aware of what was going on. . . . Now, I want to make this clear to the Court, that I held that deed in my file with the idea— the state of mind—if I were ever to part with the possession of that *I would be doing a positive wrong to Mrs. Hahn and her estate.* I felt so strongly about the circumstances surrounding that signing that I resolved that I would never put that particular deed into operation. THE COURT: Did you ever go back to her and talk to her when she went to take up her residence with the Lienerts, to ascertain from her the circumstances under which she was living there? MR. McCARTHY: No, I didn't. I could tell you why, if your Honor would like me to. THE COURT: Go ahead. MR. McCARTHY: In talking to Mrs. Lienert, Mrs. Lienert told me that she would take care of Mrs. Hahn even if she

never got anything for it, and I just assumed from that that I had time to let the situation work itself out and make sure that nobody was wrong in this situation. THE COURT: You should never delay the preparation of papers for elderly people. MR. McCARTHY: I wasn't at all convinced—as a matter of fact, *I was completely convinced when I left there that Mrs. Hahn didn't request this* be made up. I felt very strongly about it, and I can say honestly to you that the only reason why I didn't announce on the spot that this can't be, that evening—I didn't say it in the presence of Mrs. Heilmann because I actually feared it would have a bad effect on her health, and might actually kill her, because she was a very sick lady. She died two months later, and I knew she was sick, and I knew how much she was looking forward to being relieved of the burden of Mrs. Hahn, and I felt if I just washed the whole thing out there, she might just pass out on the spot. That is why I didn't do it."

Mr. Herold corroborated Mr. McCarthy about Mrs. Hahn thinking he was the doctor—he thought that was strange; he likewise confirmed McCarthy's testimony that Mrs. Hahn's sister intervened and directed Mrs. Hahn to sign the deed, which she did. Herold did not know who the other woman (Mrs. Heilmann) was or why she intervened or interfered.

Several witnesses testified on behalf of the claimants: Mrs. Bridge testified that Mrs. Hahn told her "I'll leave her [Mrs. Lienert] the house."

Mrs. Malone, who was Mrs. Lienert's sister, testified that Mrs. Hahn said to her "I made *a will*. You are not getting anything, but I made sure that Tooty (Mrs. Lienert) is getting the house." Mrs. Florence Burns asked Mrs. Hahn when she was at Mrs. Lienert's home "They went up there to sign the deed, and I asked her if she knew that she had signed her home to Mrs.

Lienert, and she said 'Yes, I do. She is taking good care of me and *I am going to give* it to her.' "

Several facts are clear from the evidence: (1) There was not a scintilla of proof of an oral contract made by Mrs. Hahn with Mr. and Mrs. Lienert to give them her property in consideration of their providing a home and care for her. It is therefore impossible for the Court to award them this property. (2) Assuming, arguendo, that their claim can in some undisclosed way be supported by the deed to the property, combined with a donative intent on the part of Mrs. Hahn, plus a delivery of the deed to one with instructions to deliver it to the Lienerts, the Lienerts fail to prove by clear, precise and convincing evidence even that kind of a claim. Mrs. Hahn never directed or requested her attorney, Mr. McCarthy, to deliver the deed to the Lienerts or to hold the deed for the Lienerts, either at the time it was executed or at any other time. (3) There was no evidence that Mrs. Hahn knew what she was doing at the time she signed the deed and Mr. McCarthy was convinced that she did not understand what she was doing. The above recited loose testimony of claimants' witnesses does not satisfy their burden of proof; especially is this inadequate in the face of the clear positive testimony of Mr. McCarthy, corroborated in material respects by Mr. Herold.

For these reasons, I dissent. Neither the law nor equity (one-third of decedent's property for two months' care) support the Lienerts' present claim. I would remand the case to the Orphans' Court with directions to open the adjudication and allow the Lienerts to present testimony in support of their claim for bed, board and care.