J. S42032/17

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE:  ESTATE OF | : | IN THE SUPERIOR COURT OF |
| DONALD KEITH BIRCHARD | : | PENNSYLVANIA |
| A/K/A KEITH BIRCHARD | : | |
| | : | No. 141 MDA 2017 |
| APPEAL OF:  JANET BIRCHARD | : | |

Appeal from the Order Entered December 28, 2016,
in the Court of Common Pleas of Susquehanna County
Orphans' Court Division at No. OC048-2015

BEFORE:  OLSON, J., MOULTON, J., AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:            **FILED AUGUST 18, 2017**

Janet Birchard appeals the order of the Court of Common Pleas of Susquehanna County that denied her counterclaim that sought an accounting from the estate of Donald Keith Birchard ("Decedent")[1] for personal property taken from the 116 High Street property ("Property"), and the return of that personal property or reimbursement for any property sold by the estate as the claim was barred by equitable estoppel; her counterclaim that sought rental income for the use of the Property by Decedent and her counterclaim that sought reimbursement for accounts receivable collected by Diana Birchard ("appellee") for work performed by

---

[1] Decedent was the son of Donald and Janet Birchard and the husband of Diana Birchard.

B & D Plumbing, Heating, and Electrical ("B & D").[2]  After careful review, we

affirm.

The relevant facts and procedural history, as found by the trial court,

are as follows:

> On October 27, 2014, Donald Keith Birchard a/k/a Keith Birchard (hereinafter referred to as [D]ecedent) died.  On November 4, 2014, [appellee], [D]ecedent's widow, was granted letters testamentary appointing her as the Executrix of [D]ecedent's estate.  On June 9, 2015, [appellee] filed a petition seeking access to a business property located at [the Property].  [Appellee] contended that some of [D]ecedent's assets were stored at that premises and that the assets were necessary to conclude the administration of the Estate.  The person in control of the [Property] was [D]ecedent's mother, [appellant].

> On June 22, 2015, [appellant] filed an answer to the petition seeking access to the [Property].  [Appellant] did not consent to [appellee] having access to the [Property] except "as part of a 'global' resolution of issues between the parties."  In this answer, [appellant] included a "new matter" and a "counterclaim" through which she contended that assets belonging to her late husband, Donald Birchard, had been misappropriated by [D]ecedent's estate.  [Appellant] claimed damages relating to (1) rental income for the period of time that [D]ecedent utilized the [Property] for his business operations; (2) reimbursements for any accounts receivable relating to the former business

---

[2] The trial court also denied Diana Birchard's petition that sought to seize personal property from the Property.  The trial court found that Diana Birchard's counterclaim that sought reimbursement for her work collecting accounts receivable for B & D and her work resolving outstanding accounts payable of B & D was moot.  The trial court denied Diana Birchard's counterclaim that sought compensation for Decedent's unpaid wages for work performed for B & D.  Diana Birchard did not appeal these rulings.

operated by [appellant's] late husband, but which were collected by [D]ecedent's estate; and (3) an accounting of any assets or inventory of her late husband's business taken by [D]ecedent's estate (and reimbursement for any of her late husband's assets or inventory sold by [D]ecedent's estate).

On July 13, 2015, [appellee] filed an answer to [appellant's] new matter and counterclaim. [Appellee] also filed her own new matter asserting the affirmative defenses of (1) estoppel; (2) impossibility of performance; (3) justification; (4) statute of limitations; and (5) unclean hands.

. . . .

On February 23, 2016, [appellant's] counsel wrote to the Court requesting a trial date on [appellant's] counterclaim. On February 26, 2016, [appellant] filed a formal petition seeking a hearing on her counterclaim. On March 1, 2016, this Court scheduled a hearing date for May 23, 2016.

On May 11, 2016, [appellee] filed an amended answer to [appellee's] counterclaim in which [appellee] then asserted additional claims against [appellant]. While [appellee] maintained the position that [D]ecedent had taken over the business operations in total in April 2014, [appellee] raised the following claims in the event that it was determined that no formal transfer of the family business occurred: (1) *quantum meruit* relating to work performed by [appellee] in collecting the accounts receivable; (2) *quantum meruit* relating to work performed by [D]ecedent for [appellee's] business for which he was never compensated; and (3) *quantum meruit* for [appellee's] work in resolving debt owed by respondent in connection with the former business entity.

A hearing was held on May 23, 2016. Each party has submitted supporting briefs and the matter is now ripe for disposition.

## II.    Findings of Fact

1.    [Appellant] and Donald I. Birchard were married in 1958.

2.    During the parties' marriage, Donald I. Birchard owned and operated a business known as [B & D] which had a business location and building at [the Property].

3.    Donald I. Birchard initially owned and operated [B & D] with Charles C. Dietrich, Jr., as partners.

4.    In 1974, Donald I. Birchard bought out Charles C. Dietrich, Jr.'s interest in the partnership and [B & D] became a sole proprietorship.

5.    Decedent was born on April 1, 1959. Decedent is the son of Donald I. Birchard and [appellant]. Decedent spent most of his adult life as an employee of [B & D]. Decedent worked with his father at [B & D] for 30 years.

6.    On October 9, 2010, Donald I. Birchard died testate leaving all of his estate to his wife, [appellant], which included [B & D].

7.    Prior to his death in October 2010, Donald I. Birchard had been sick and [D]ecedent had been running the family business.

8.    Aside from [D]ecedent, Gary Travis was the only other employee of the family business.

9.    After the death of Donald I. Birchard, [D]ecedent continued to run the family business and [appellant] continued to assist with the bookwork, answering the phone, making deposits and writing out checks for payroll and other expenses. Decedent began sending out the bills and invoices for the work performed by [B & D].

10. From 2010 through April 2014, [D]ecedent remained an employee of [B & D] and was paid an hourly wage of $23 per hour based upon a 40 hour week.

11. [Appellant] continued to report the income from [B & D] on her income tax return.

12. On March 31, 2014, [appellant] closed [B & D].

13. On April 1, 2014, [D]ecedent formally took over his father's business and began operating it as his own business under the name of Birchard Plumbing.

14. Terry Cooper, an employee at NBT Bank, testified that she assisted [D]ecedent in starting up his new business entity. Initially, [D]ecedent simply wanted to use the pre-existing business name of [B & D], but was unable to do so because he was not an owner of that business entity. Decedent discovered that he needed to start a separate business entity, Birchard Plumbing.

15. Decedent opened up a new business account and [appellant's] name was placed on the new account. Decedent was the sole proprietor of Birchard Plumbing.

16. Decedent also purchased a new truck for Birchard Plumbing.

17. [Appellant] continued to assist in the transition of the business and transferred monies ($800.00) in April 2014 from the Birchard Plumbing business account into [B & D] account to cover expenses for unemployment compensation fund payments and tax payments.

18. At the time that [D]ecedent created the new business of Birchard Plumbing, there was still

- 5 -

outstanding work that had been contracted out through [B & D]. Gary Travis completed this prior work and the payments were received by Birchard Plumbing -- not [B & D] -- and placed in the Birchard Plumbing business account.

19. Decedent was making deposits into the Birchard Plumbing account of payments received from work performed by [B & D]. [Appellant] never demanded that [D]ecedent remit any monies to her for the work performed by [B & D].

20. After March 31, 2014, when a payment was received for work previously performed by [B & D], [appellant] turned this money over to [D]ecedent for deposit into the account of Birchard Plumbing.

21. Birchard Plumbing operated out of the same address as [B & D], namely [the Property].

22. Decedent never paid respondent any rent for the [Property], and [D]ecedent and [appellant] never discussed any rental arrangement.

23. [Appellant] admitted that she allowed [D]ecedent to use [the Property] without paying any rent.

24. [Appellant] closed out all of the former business accounts and took no efforts whatsoever to collect on any accounts receivable relating to [B & D].

25. After the creation of Birchard Plumbing, [appellant] was turning over checks received for work performed by [B & D] to [D]ecedent for deposit into the Birchard Plumbing business account. [Appellant] did not seek any reimbursement for these monies except to the extent necessary to pay any outstanding obligations of [B & D] debts and obligations.

- 6 -

26. On October 27, 2014, [D]ecedent died.

27. On November 4, 2014, [appellee] probated [D]ecedent's will and was appointed as the Executrix of [D]ecedent's estate.

28. As part of her duties to the Estate, [appellee] attempted to obtain [D]ecedent's assets, collect outstanding monies owed to [D]ecedent's business, Birchard Plumbing, and pay the outstanding debts owed by Birchard Plumbing.

29. [Appellee] discovered that suppliers had continued to bill [B & D] even after Birchard Plumbing had been formally created.

30. [Appellee] made arrangements with some of the suppliers to return the inventory in order to pay off outstanding bills even where those bills were in the name of [B & D], not Birchard Plumbing.

31. [Appellee] sent out bills for unpaid work associated with [B & D] based upon [D]ecedent's records.

32. [Appellee] was able to identify $164,092.13 in outstanding accounts receivable for work performed by [D]ecedent (or Gary Travis) while they worked for [B & D] prior to April 1, 2014. As of the date of the hearing in this matter, [appellee] had collected $95,691.40 in accounts receivable for work performed prior to April 1, 2014.

33. [Appellant] has never personally taken any steps whatsoever to collect on any outstanding accounts receivable associated with [B & D].

34. [Appellant] never made any claim to the revenues generated from collection of accounts receivable from [B & D] until [appellee] filed her request to gain access to [the Property] in

order to seize personal Property she believed belonged to [D]ecedent's estate. [Appellant's] assertion that she was entitled to the former accounts receivable associated with [B & D] was made 8 months after [D]ecedent's death, and 14 months after [B & D] ceased operation and Birchard Plumbing took over all of its work and accounts.

35. [Appellee] has never paid [appellant] any monies in connection with the collection efforts that related to work (and materials) that occurred prior to April 1, 2014 while [D]ecedent was working for [B & D].

Trial court opinion, 12/27/16 at 1-8 (footnote and citations omitted).

The trial court determined that appellant made a gift of B & D to Decedent which became the property of Decedent's estate under the administration of appellee. As a result, the trial court ruled that none of appellant's claims had merit. On January 16, 2017, appellant filed a timely notice of appeal.

On appeal, appellant raises the following issues for this court's review:

[1.] Did the [trial court] err in determining that [a]ppellant "gifted to [D]ecedent on April 1, 2014, the business entity known as [B & D] together with its supplier accounts, accounts receivable and use of [the Property]"?

[2.] Did the [trial court] misapply the law of "gift" with respect to the creation of a "presumption" with respect to an alleged gift of the business entity known as [B & D] together with its supplier accounts, accounts receivable and use of [the Property]?

[3.] Did the [trial court] err in its application of the law of "gift" to the facts of this case?

[4.] Did the [trial court] err in failing to determine that the amounts of "accounts receivable" owned by [B & D] that were collected by [a]ppellee actually belonged to [a]ppellant to whom these amounts should have been paid?

[5.] Did the [trial court] err in its interpretation of actions taken by [a]ppellant concerning [D]ecedent's business started April 1, 2014?

[6.] Did the [trial court] err in failing to recognize that the [D]ecedent acted as an employee of [a]ppellant at all times prior to April 1, 2014?

[7.] Did the [trial court] err in dismissing the counterclaim of [a]ppellant seeking payment of monies due from [a]ppellee to [a]ppellant as owner of [B & D]?

Appellant's brief at 2-3.

Initially, appellant contends in the argument section of her brief that until March 31, 2014, Decedent was an employee of B & D.[3]

This court's review of a decision of an Orphans' Court is as follows:

> Our standard of review of the findings of an [O]rphans' [C]ourt is deferential.
>
> > When reviewing a decree entered by the Orphans' Court, this Court must determine whether the record is free from legal error and the court's factual findings are supported by the evidence. Because the Orphans' Court sits as the fact-finder, it determines the credibility of the witnesses and,

---

[3] Appellant has presented her issues in a different sequence in the argument section of her brief than she did in her "Questions Raised on Appeal."

> on review, we will not reverse its credibility determinations absent an abuse of that discretion.
>
> However, we are not constrained to give the same deference to any resulting legal conclusions.
>
> *In re Estate of Harrison*, 745 A.2d 676, 678-679, *appeal denied*, 758 A.2d 1200 (Pa. 2000). (internal citations and quotation marks omitted). "[T]he Orphans' [C]ourt decision will not be reversed unless there has been an abuse of discretion or a fundamental error in applying the correct principles of law." *In re Estate of Luongo*, 823 A.2d 942, 951 (Pa.Super. 2003), *appeal denied*, 847 A.2d 1287 (Pa. 2003).

*In re Estate of Whitley*, 50 A.3d 203, 206-207 (Pa.Super. 2012) (internal citations and quotation marks omitted).

Appellant agrees with the trial court's findings that Decedent spent most of his adult life as an employee of B & D and that from 2010 through March 31, 2014 Decedent remained an employee at B & D. It is not in dispute that Decedent was an employee of B & D through March 31, 2014. However, appellant raises this issue because the trial court referred to Decedent as the "*de facto*" owner of B & D. While Decedent did perform a wide variety of tasks for B & D after the death of his father and was in charge of the day-to-day operations of the business, he was not the owner. However, the resolution of this issue does little to resolve the central question of whether the trial court erred or abused its discretion when it determined that appellant made a gift of B & D to Decedent.

Appellant next contends that since the death of her husband in 2010, she has been the owner of B & D and continued to report the income from B & D until March 31, 2014, on her income tax return as the trial court found in Finding of Fact No. 11. However, she questions the accuracy of Finding of Fact No. 12 that she closed B & D because, according to her, she never closed it. She just stopped operating a plumbing business. Again, it is not clear whether this difference is significant. B & D did not operate as a plumbing business after April 1, 2014. It is also not clear that the term "closed" is different than "stopped doing plumbing business." (Appellant's brief at 10.)

Appellant also asserts that Decedent was never the "real owner" of B & D. Appellant takes issue with the trial court's description of Decedent's role in B & D after the death of her husband, *i.e.*, "there would have been no [B & D] after October 9, 2010 but for [D]ecedent's work, long hours and efforts to keep the family business afloat." (Trial court opinion, 12/27/16 at 9-10.) Appellant asserts that there is no evidence that B & D would not have survived without Decedent's efforts as other plumbers could have been employed. The record does not indicate that the business would not have survived without Decedent. The record does reflect that he worked very long hours at a variety of tasks.

Appellant next contends that the concept of "gifts" was not pled or argued before the trial court by appellee. However, other than stating this point, appellant does not really raise an issue for this court's review.

Appellant next contends that the trial court erred when it found that there was donative intent on the part of appellant to give the accounts receivable of B & D to Decedent.

In order to be considered a valid *inter vivos gift*, a gift:

> requires donative intent, delivery, and acceptance. There must be evidence of an intention to make a gift accompanied by delivery, actual or constructive, of a nature sufficient not only to divest the donor of all dominion over the property, but to invest the donee with complete control. All of the circumstances must be considered in determining whether a gift was made. Donative intent can be inferred from the relationship between the donor and donee.

*In re Estate of Moskowitz*, 115 A.3d 372, 386 (Pa.Super. 2015), *appeal denied*, 130 A.3d 1291 (Pa. 2015) (internal citations and quotation omitted).

Appellant asserts that with respect to the accounts receivable, appellant possessed neither donative intent nor delivery. As of the date of the hearing before the trial court, the trial court found that appellee had collected $95,691.40 in accounts receivable for work performed prior to April 1, 2014, or in other words, for work performed for or by B & D. Appellant argues that it is very unlikely that appellant, who was 74 years old at the time with no other means of support, would just give this money

away. Appellant also adds that there is no evidence that she gave the business (B & D) to Decedent either in 2014 or ever.

With respect to this issue, the trial court determined:

> The record in this case clearly demonstrates that [appellant] made an *inter vivos* gift of the family business to [D]ecedent on April 1, 2014. Given the familial nature of the gratuitous transfer of this business, the evidentiary burden is slight and it has been overwhelmingly met. Decedent had worked for the family business for 30 years. Decedent had run the family business when his father became ill. Decedent continued to run the family business after his father died. Upon learning that [D]ecedent could not continue to operate under the business name of [B & D], [D]ecedent started his own business, Birchard Plumbing, on April 1, 2014. [Appellant] was involved in the creation of this business entity. [Appellant] closed out the business accounts of [B & D] and took no steps whatsoever to collect on any accounts receivable. When checks came in for work performed by [B & D], [appellant] personally turned them over to [D]ecedent for deposit into the new business account. [Appellant] never sought any reimbursement for these payments from Birchard Plumbing. The new business also paid off the outstanding debt of the old business account. After April 1, 2014, [appellant] demonstrated no ownership interest whatsoever in any aspect of the family business now known as Birchard Plumbing. [Appellant] never even discussed any rent for the use of [the Property] by Birchard Plumbing. As of April 1, 2014, [D]ecedent had total control over the family business and [appellant] had withdrawn herself to simply being a signatory on the new business account. Thus, there is overwhelming evidence that [appellant] intended to give her son the family business and that she delivered and transferred the family business over to him.
>
> Given this evidence, there is a presumption that [appellant] gifted to [D]ecedent on April 1, 2014

- 13 -

the business entity known as [B & D] together with its supplier accounts, accounts receivable and use of [the Property]. Not only was [D]ecedent that natural object of [appellant's] bounty, but [D]ecedent ha[d] spent nearly his entire adult life working for the family business and it would have simply terminated but for his efforts to keep it up and running through his father's illness and after his father's [death]. In order to rebut the presumption that the family business was gifted to [D]ecedent, [appellant] needed to present clear and convincing evidence that she had a contrary intent. [Appellant] has failed to present any evidence that she had a contrary intent. [Appellant] has failed to present any evidence at all that would suggest a contrary intent. Rather, the evidence points to but one conclusion, [appellant] intended for [D]ecedent to take over the family business in its entirety as of April 1, 2014 and she actively assisted [D]ecedent in making the transition to Birchard Plumbing.

For this reason, [appellant] has failed to sustain her burden of proof as it relates to her claims for (1) rental income in connection with the use of [the Property] between April and October 2014, and (2) reimbursement for the collection of any accounts receivable recovered by the Estate for any work performed prior to April 1, 2014.

Trial court opinion, 12/27/16 at 14-15 (footnote omitted).

Appellant argues that the factors cited by the trial court as evidence of a gift of the accounts receivable are, instead, consistent with appellant making it easier for Decedent, her son, to start his new business. While it is true that these factors could indicate just that appellant was helping her son, they also support the alternate determination made by the trial court that appellant gave the business of B & D to her son.

Appellant also argues that there was no delivery of the accounts receivable because appellee removed the records containing the accounts receivable from the Property. However, the trial court found that appellant had given the use of the Property to the Decedent for the business, so it would logically follow that the records of the business would be located at the Property. This argument does not persuade this court.

Appellant next contends that the trial court incorrectly applied the burden of proof and presumptions in this case.

"Initially, the burden is on the alleged donee to prove a gift inter vivos by clear, precise and convincing evidence. Once prima facie evidence of a gift is established, a presumption of validity arises and the burden shifts to the contestant to rebut this presumption by clear, precise and convincing evidence." *Hera v. McCormick*, 625 A.2d 682, 686 (Pa.Super. 1993) (citations omitted). Further, where the transfer is from a parent to a child, the action of the donor is viewed as natural and less evidence is needed to establish the intent to give a gift. *See Brightbill v. Boeshore*, 122 A.2d 38, 41-42 (Pa. 1956).

Appellant asserts that, even given the reduced burden of proof for a parental transfer, that appellee did not establish that appellant made an *inter vivos* gift.

A review of the record reveals that appellee testified that appellant and Decedent had a conversation after appellant's husband's death that it was

not fair for Decedent to resume all the responsibilities of the business and it not be his. (Notes of testimony, 8/29/16 at 57.) Appellee also explained that appellant took $800 from the Birchard Plumbing bank account to pay taxes for the first quarter of 2014 for B & D. (*Id.* at 60.) Appellee also testified that appellant was aware that appellee was collecting accounts receivable for amounts owed to B & D. (*Id.* at 61-65.) In fact, appellee reported that appellant filled out the deposit slips and did not demand any of the money. (*Id.* at 66-67.) Appellee also handled the return of inventory and payments to suppliers for goods that were purchased by B & D. (*Id.* at 71-72.) Appellee further explained that, after the creation of Birchard Plumbing, Decedent continued to purchase inventory under the B & D account. (*Id.* at 74.)

This testimony supports the findings and conclusions of the trial court that appellant transferred the assets and liabilities of B & D to Birchard Plumbing when Decedent commenced operating as Birchard Plumbing. This court finds no abuse of discretion or error of law by the trial court in the application of the burden of proof and that appellee met her burden of proof.[4]

---

[4] Appellant concedes that there were gifts from her to Decedent but that the whole business and the accounts receivable were not given to Decedent. Appellant further argues that there was no evidence that she was aware that work that had been contracted out through B & D was completed by Birchard Plumbing and placed in the Birchard Plumbing account. Similarly, there was no evidence that deposits were made into the Birchard Plumbing account with appellant's knowledge. However, appellee entered into evidence

J. S42032/17

Order affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/18/2017

---

deposit slips in appellant's handwriting from this period. Appellant also seeks rental payments of $1,000 per month for the six months that Decedent operated Birchard Plumbing. There is no record of appellant ever requesting rent from Decedent. Given that the trial court found that appellant gave the business to Decedent, that presumably included the use of the Property.

- 17 -